## **PRELIMINARY STATEMENT**

This lawsuit arises from the alleged wrongful arrest of Plaintiff Nijer Parks, and attempts to improperly hold First Assistant Middlesex County Prosecutor Christopher Kuberiet ("Kuberiet"), liable for his alleged prosecutorial decisions. Plaintiff Nijer Parks, alleges that his constitutional rights were violated by defendants. Plaintiff identifies Kuberiet as the prosecutor who allowed the use of facial recognition software and failed to supervise the use of the facial recognition software. See **Exhibit A**, Plaintiff's Amended Complaint, ¶ 112.

Defendant Christopher Kuberiet moves to dismiss Plaintiff's complaint against him pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff's claims fail for several reasons. To the extent Plaintiff is suing Kuberiet in his official capacity, Plaintiff's claims against Kuberiet fail to state a claim because State officials acting in their official capacities are entitled to Absolute Immunity and are not considered persons subject to suit under 42 U.S.C.A. § 1983 and the New Jersey Civil Rights Act ("NJCRA").

In addition, Plaintiff's claims against Kuberiet should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Kuberiet is entitled to absolute prosecutorial immunity for actions undertaken in his role as acting prosecutor. That is, his determinations about whether and how to prosecute Nijer Parks were core prosecutorial activities intimately associated with the judicial process and protected by the absolute immunity. In addition, nowhere does plaintiff's complaint articulate what actions or inactions of Kuberiet violated plaintiff's constitutional rights and, thus, the complaint also fails to state a claim.

The doctrine of qualified immunity shield Kuberiet from liability in his individual capacity because Plaintiff has failed to aver the violation of a clearly established right.

Lastly, Plaintiff failed to file a notice of tort claim against Kuberiet within 90 days after the cause of action accrued or file a motion for leave to file a late notice of claim. Plaintiff failed to allege in the Complaint that he served a Notice of Claim as required by N.J. Stat. Ann. § 59:8-8. Thus, his tort claims against Kuberiet are "forever barred."

For all of these reasons, the Court should dismiss Plaintiff's Complaint against defendant Christopher Kuberiet with prejudice.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

For the purpose of this motion only, Defendant accepts the factual and procedural recitation contained in Plaintiff's amended complaint, filed in New Jersey Superior Court, Passaic County, on January 15, 2021.

According to the amended complaint, Plaintiff alleges that on February 5, 2019, Plaintiff was arrested at the Woodbridge Police Station. *See* **Exhibit A**, Plaintiff's Amended Complaint at ¶ 41-45. Plaintiff alleges that Woodbridge Police Department used facial recognition technology on a fake driver's license obtained from the scene of the crime. *See* **Exhibit A**, ¶ 12. Plaintiff then alleges that the photo from the fake license resulted in "high profile" match to Plaintiff, and it was never checked against DNA. *See* **Exhibit A**, ¶ 13-15.

As to Kuberiet, plaintiff alleges that the Middlesex County Prosecutor failed to supervise the use of facial recognition by its assistant prosecutors. *See* **Exhibit A**, ¶ 112. Plaintiff further alleges that the Middlesex County Prosecutor failed to properly train and discipline its assistant prosecutors. *See* **Exhibit A,** ¶ 112-113. As a result of this encounter, plaintiff asserts constitutional violations against the defendants collectively and seeks judgment for monetary damages.

Additionally, Plaintiff failed to file a notice of tort claim against Kuberiet. The New Jersey Tort Claims Act requires that Plaintiff file a notice of tort claim within 90 days after the cause of action accrues. Thus, Plaintiff's time to file a notice of claim expired on May 16, 2019. Thus, his Complaint as to tort claims must be dismissed with prejudice.

## STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for lack of subject matter jurisdiction. A motion under this Rule can be brought at any time during the litigation, including as late as on appeal. *Int'l Fin. Corp. v. Kaiser Grp. Int'l, Inc.,* 399 F.3d 558, 565 (3d Cir. 2005).

In evaluating a motion to dismiss under Rule 12(b)(1), a district court must first determine whether the defendant's motion attacks (1) the complaint as deficient on its face; or (2) the existence of subject matter jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A defendant's "facial attack" entails an assertion that the plaintiff did not properly plead jurisdiction, whereas a defendant's "factual attack" involves an averment that jurisdiction is lacking on the basis of facts outside of the pleadings. *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).

Where a Rule 12(b)(1) motion facially attacks the complaint, the court must take all allegations in the complaint as true. *Mortensen*, 549 F.2d at 891. Where, however, the defendant attacks the court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to the plaintiff's allegations, and the court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. *Id.* In both scenarios, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Id.*

**B.     Federal Rule of Civil Procedure 12(b)(6)**

In lieu of filing an answer to a complaint, a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this Rule, a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.*; *see also Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 626 (D.N.J. 2005) (providing that on a Rule 12(b)(6) motion, district courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations") (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 n.8 (3d Cir. 1997)).

Under the *Iqbal/Twombly* pleading framework, a district court should undertake a three-prong analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563. This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

Here, Kuberiet is entitled to absolute prosecutorial immunity and the complaint should be dismissed on that basis alone. In addition, the complaint fails to state a claim because it does not specify any actions or inactions of Kuberiet that violated plaintiff's rights. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted, and his civil rights claims must be dismissed with prejudice.

## LEGAL ARGUMENTS

### POINT I

**THE ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST KUBERIET.**

More than a mere defense to liability, absolute prosecutorial immunity embodies the "right not to stand trial," *In re Montgomery County*, 215 F.3d 367, 373 (3d Cir. 2000) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)), and is properly raised in a motion to dismiss. *See Kulwicki v. Dawson,* 969 F.2d 1454, 1459, 1461-62 (3d Cir. 1992). It is conferred on prosecutors in civil rights lawsuits "out of concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Loigman v. Twp. Comm.*, 185 N.J. 566, 581 (2004). "Although prosecutorial immunity 'leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty,' it serves the 'broader public interest' of ensuring that vexatious litigation not suppress 'the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.'" *Id.* at 581-82 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 427-28 (1976)).

New Jersey courts take a "functional approach" when determining whether absolute immunity applies to a prosecutor's actions by "look[ing] to the nature of the function performed .

. . [and] not [merely] the identity of the actor who performed it." *Small v. State*, 2015 WL 1057840, at *6 (App. Div. March 12, 2015) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). In short, "[a]bsolute immunity applies to prosecutorial activities intimately associated with the judicial process, including evaluating evidence, *deciding to prosecute*, and preparing for and presenting evidence in the grand jury and trial, even if it is alleged they were conducted with malice." *Id.* (quoting *Buckley*, 509 U.S. at 273); *Love v. Middlesex Cty. Prosecutor's Office*, 2020 WL 3124681, at *4 (App. Div. June 12, 2020) ("The decision to initiate and prosecute the forfeiture action was part of the judicial phase of the criminal proceedings brought against Love. Those actions fall squarely within the absolute prosecutorial immunity afforded to prosecutors.").

Similarly, relying on the Supreme Court's prosecutorial immunity decisions--particularly the one in *Butz v. Economou*, 438 U.S. 478, 512-16 (1978), which extended the immunity to protect a government's civil/administrative attorneys--the Third Circuit relevantly explained that absolute prosecutorial immunity encompasses "the decision to initiate a prosecution"; the "evaluation of evidence collected by investigators"; and "even [the] failure to conduct [an] adequate investigation before filing charges." *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008). On the other hand, absolute immunity does not extend to "a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Small*, 2015 WL 1057840, at *7 (quoting *Buckley*, 509 U.S. at 273).

In all, to fall within the absolute immunity, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). The importance of this protection cannot be overstated, for

prosecutorial immunity "is essential for the proper functioning of our criminal and civil justice systems." *Loigman,* 185 N.J. at 582.

In this matter, the claims against Kuberiet arise from his alleged failure to supervise assistant prosecutors in the use of facial recognition technology. *See* **Exhibit A,** ¶ 112. Plaintiff alleges that he stated several times that this was a case of mistaken identity. *See generally* **Exhibit A.** However**,** the decision to drop or amend criminal charges is protected by the absolute immunity. *See Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (holding that a prosecutor's decision to drop or forgo more serious charges in exchange for a plea agreement is protected by the prosecutorial immunity); *Anderson v. Larson*, 327 F.3d 762, 768-69 (8th Cir. 2003) (finding that prosecutor's decision to drop charges falls under the absolute immunity); *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1068 (C.D. Cal. 2012) (holding that dropping or amending charges are prosecutorial functions intimately associated with the judicial phase of the criminal process); *Keffer v. Reese*, 2018 WL 928255, at *8 (W.D. Pa. Feb. 16, 2018) (concluding that amending charges is a prosecutorial function shielded by absolute immunity).

This case illustrates why courts have afforded absolute prosecutorial immunity to the government's prosecutors and civil attorneys. Plaintiff's claims against Kuberiet relate to his conduct as an advocate for the State's criminal prosecution – which falls squarely within the absolute prosecutorial immunity. Plaintiff – who argued mistaken identify after he was identified as the individual who committed a crime after being a "high profile" match from the facial recognition technology --  has "react[ed] angrily and . . . seek[s] vengeance in the courts." *Butz*, 438 U.S. at 515-16.  However, because prosecutors must make their prosecutorial and legal decisions "free from intimidation and harassment," Kuberiet must be sheilded by absolute prosecutorial immunity from this mere retaliatory lawsuit. *Id.* at 516.

7

Here, no matter the statutory basis of claims against First Assistant Middlesex County Prosecutor Kuberiet, he is entitled to absolute prosecutorial immunity. Plaintiff has failed to allege any conduct on the part of First Assistant Middlesex County Prosecutor Kuberiet that was not part of his role as an advocate before the court. In addition, Plaintiff has also failed to allege that First Assistant Middlesex County Prosecutor Kuberiet's actions constituted a crime, actual fraud, actual malice or willful misconduct. As such, this Court should dismiss Plaintiff's claims against Kuberiet with prejudice based on the absolute prosecutorial immunity.

## POINT II

### ALL CONSTITUTIONAL CLAIMS AGAINST KUBERIET SHOULD FURTHER BE DISMISSED BECAUSE HE IS NOT CONSIDERED A "PERSON" AMENABLE TO SUIT UNDER THE NJCRA.

Plaintiff sues Kuberiet in his official capacity. *See* **Exhibit A**, ¶ 112 (emphasis added). Plaintiff brings his suit under the NJCRA. State constitutional claims of this nature in a civil lawsuit can only be brought pursuant to the NJCRA, rather than directly under the New Jersey Constitution. As such, Kuberiet is not amenable to suit under the NJCRA, justifying the dismissal of all constitutional claims against it with prejudice.

As an initial matter, New Jersey's "Civil Rights Act is modeled off the analogous Federal Civil Rights Act, 42 U.S.C. § 1983." *Tumpson v. Farina*, 218 N.J. 450, 474 (2014). Notably, § 1983 represents the *only* vehicle for vindicating federal constitutional rights in the civil forum. *See Bullard v. Bureau of Unemployment and Allowances*, 516 F. App'x 111, 112 (3d Cir. 2013) (stating that the "vehicle" for bringing plaintiff's constitutional claims was § 1983); *Gass v. DYFS Workers*, 371 F. App'x 315 n.1 (3d Cir. 2010) (affirming district court's conclusion that § 1983

was "the proper vehicle for bringing [plaintiff's] civil constitutional violation claims"). In other words, all civil actions based on federal constitutional claims must be brought pursuant to § 1983.

The NJCRA, like its federal counterpart, was created as the statutory "remedy for the violation of substantive rights found in our *State Constitution* and laws." *See Falat v. Cty. of Hunterdon*, 2018 WL 3554139, at *6 (App. Div. July 25, 2018) (quoting *Tumpson*, 218 N.J. at 474) (emphasis added) (discussing purpose of NJCRA). The NJCRA provides that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J. Stat. Ann. § 10:6-2c.]

The NJCRA was modeled after 42 U.S.C.A. § 1983, and it is interpreted analogously to the Federal statute. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). The Act was adopted in 2004 "for the broad purpose of assuring a state law cause of action for violations of *state* and federal *constitutional rights* and to fill any gaps in state statutory anti-discrimination protection." *Owens v. Feigin*, 194 N.J. 607, 611 (2008) (emphasis added).

A plaintiff seeking civil redress for violations of the New Jersey Constitution like Parks here must proceed under the NJCRA, which is the statutory legal basis to bring civil actions based on substantive constitutional rights in this State. *See Ramos v. Flowers*, 429 N.J. Super. 13, 19 (App. Div. 2012) (considering plaintiff's claims for violations of free-speech rights under Article I, paragraphs 6 and 18 of the New Jersey Constitution--as well as for unlawful search and seizure pursuant to Article I, paragraph 7--under the NJCRA); *Estate of Martin v. U.S. Marshals Service*

*Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that Plaintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the *same* legal elements and principles as . . . [the] federal causes of action [under Section 1983]") (emphasis added)); *Calan v. City of Jersey City*, 2017 WL 1135231, at *2 (D.N.J. March 27, 2017) ("Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution . . . . The NJCRA does the same for the federal constitution, *as well as for the New Jersey constitution*.") (emphasis added) (citations and internal quotation marks omitted)); *Falat*, 2018 WL 3554139 at *6 (discussing how the NJCRA was intended to remedy violations of substantive rights found in the State Constitution like its federal analog).

To state a claim under 42 U.S.C.A. § 1983, a plaintiff "must demonstrate ... that the alleged deprivation was committed by a <u>person</u> acting under color of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d. Cir. 1995)(emphasis added). The NJCRA similarly requires that a defendant be a "person" to be subject to suit and defines the term "person." N.J.S.A. 10:6-2(c); *see also Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 604 (D.N.J. 2010). Thus, the threshold inquiry in a section 1983 action is whether the defendant is a person within the meaning of section 1983.

Although the statute does not define "person," it is well established that, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" based on principles of sovereign immunity that intersect with the law. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Quern v. Jordan*, 440 U.S. 332, 350 (1979).[1] Furthermore, state

---

[1] A state official in his or her official capacity would be a person under 42 U.S.C.A. § 1983 only *if sued for prospective injunctive relief*. *Will*, *supra*, 491 U.S. at 71 n. 10 (emphasis added). However, plaintiff does not seek such relief in his complaint.

agencies also are not persons under section 1983. *Howlett v. Rose*, 496 U.S. 356, 365 (1990)("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court"); *see Cronen v. Texas Dep't of Human Serv.*, 977 F.2d 934, 936 (5th Cir. 1992); *Kroll v. Board of Trustees*, 934 F.2d 904, 910 n. 7 (7th Cir.), *cert. denied*, 502 U.S. 941 (1991); *Manning v. South Carolina Dep't of Highway and Pub. Transp.*, 914 F.2d 44, 48 (4th Cir. 1990).

The Third Circuit has specifically held that New Jersey County prosecutors offices are considered "state agencies" for § 1983 purposes when fulfilling their law enforcement and investigative — as opposed to administrative — roles. *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014). *See also McKinney v. Prosecutor Cnty. Prosecutor's Office*, 612 Fed. Appx. 62, 65 (3d Cir. 2015). In short, whereas personnel or staffing decisions fall within the administrative ambit of a prosecutor's office and therefore "flow from the County," *Evans v. City of Newark*, 2016 WL 2742862, at *9 (D.N.J. May 10, 2016), actions taken related to enforcing the criminal law fall within the "law enforcement and prosecutorial functions" of the county prosecutor's office and, thus, flow from the State. *Id.* at *10. Moreover, "[t]he category of the actions taken, and not their alleged wrongfulness, is determinative" of the civil rights statutes' "person" inquiry. *Hof v. Janci*, 2017 WL 3923296, at *5 (D.N.J. Sept. 7, 2017).

In this case, Kuberiet, acting and sued in his official capacity for monetary damages, is not considered a "person" for purposes of 42 U.S.C.A. § 1983 or the NJCRA. *Will*, *supra*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's claims against Kuberiet, to the extent he is sued only in his official capacity, must be dismissed with prejudice.

## POINT III

### PLAINTIFF'S CLAIM AGAINST FIRST ASSISTANT MIDDLESEX COUNTY PROSECUTOR CHRISTOPHER KUBERIET SHOULD BE DISMISSED BECAUSE KUBERIET IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity is an affirmative defense that shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity confers government officials with "breathing room to make reasonable but mistaken judgments about open legal questions" and shields "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Third Circuit has acknowledged that "the qualified immunity doctrine exists to encourage vigorous and unflinching enforcement of the law." *Argueta v. U.S. ICE*, 643 F.3d 60, 75 (3d Cir. 2011). As such, qualified immunity entitles a public official to not "stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The underlying rationale of qualified immunity is "to acknowledge that reasonable mistakes can be made." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Therefore, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (holding that "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law. . .").

Once a defendant raises the defense of qualified immunity, a plaintiff then has the multi-part burden of proving that (1) the government official violated a statutory or constitutional right; and (2) the asserted right was clearly established at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 735. Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson*, 555 U.S. at 236, and can dismiss claims under prong two "without ever ruling on" prong one, *Camreta v. Greene*, 563 U.S. 692, 705 (2011). In all, qualified immunity is a threshold issue that should be resolved at the outset of litigation. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

Defining the constitutional right at issue for qualified immunity purposes is critical in assessing whether or not that right was "clearly established." *Anderson*, 483 U.S. at 639. In particular, a defendant is entitled to qualified immunity unless a plaintiff shows that a clearly established right's "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779-80 (2014). Accordingly, qualified immunity would be a "worthless defense" if plaintiffs could simply invoke a "broad constitutional right," such as due process, and aver that a defendant violated that right. *Michaels v. New Jersey*, 50 F. Supp. 2d 353, 363 (D.N.J. 1999), *aff'd*, 222 F.3d 118 (3d Cir. 2000), *cert. denied*, *Michaels v. McGrath*, 531 U.S. 1118 (2001).

Furthermore, with regard to the "clearly established right" prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations omitted) (emphasis added). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). Courts in the Third Circuit "typically look to Supreme Court precedent or a consensus in

13

the Courts of Appeals" to determine if an official has "fair warning that his conduct would be unconstitutional" and that the contours of the right are "sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 449-50 (3d Cir. 2017). In short, to satisfy the second prong of the qualified immunity inquiry, a plaintiff must show that a "general constitutional rule [has been] already identified in the decisional law" and applies with "obvious clarity." *Id.* at 450 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Finally, because qualified immunity is an *immunity from suit* rather than a mere defense to liability, it is effectively lost if the case is allowed to go to discovery or trial without addressing its threshold inquiries. That is, in cases raising the issue of qualified immunity, the trial court must exercise its discretion "so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998)). Thus, the "district court should resolve that threshold question before permitting discovery." *Id.* at 598 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, Plaintiff's contention that Kuberiet failed to supervise the use of facial recognition technology by its assistant prosecutors, and failed to properly train and discipline its assistant prosecutors does not demonstrate that at the time of his conduct, he violated a constitutional right. Plaintiff has not cited to a single due process right in his First Amended Complaint that Kuberiet allegedly violated. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (explaining that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"). Kuberiet's alleged failure to supervise, train, and discipline assistant prosecutors is not conduct that would constitute a violation of Plaintiff's constitutional rights. Case law dictates that Plaintiff was not constitutionally entitled to an investigation regarding the facial recognition software used by co-defendants at all. *See Fuchs v.*

*Mercer Cty.*, 260 Fed. App'x 472, 475 (3d Cir. 2008) (finding that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation" (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)). As a result, Plaintiff cannot convert a prosecutorial decision to have one body investigate the alleged incident before another into an infraction of constitutional dimension.

Kuberiet was not involved in the alleged wrongful arrest of the Plaintiff. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018) (holding that excessive force jurisprudence mandates "direct and personal involvement in the alleged violation"). Stated differently, there is no indication in the First Amended Complaint that Kuberiet participated in or directed others to use the facial recognition technology against Plaintiff; rather, the pleading explicitly provides that Kuberiet did not become involved in the case until the facial recognition technology was used to identify Plaintiff as the suspect. *See* Exhibit A, ¶ 112.

In sum, at the time in question, there was no "clearly established" right preventing Kuberiet from using prosecutorial discretion. *See Glass v. City of Phila.*, 455 F. Supp. 2d 302, 363 (E.D. Pa. 2006) ("[T]here can be no supervisory liability in the absence of a constitutional violation."). Moreover, the First Amended Complaint is devoid of factual allegations that Kuberiet participated or directed others to use the facial recognition technology. Without such a "clearly established" right, Kuberiet could not have reasonably known that he was violating Plaintiff's constitutional rights.

Therefore, because there was no underlying constitutional violation, Kuberiet is entitled to qualified immunity.

## POINT IV

**PLAINTIFF'S CLAIM AGAINST FIRST ASSISTANT MIDDLESEX COUNTY PROSECUTOR CHRISTOPHER KUBERIET SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM THAT KUBERIET VIOLATED HIS CIVIL RIGHTS.**

Although the immunities described *supra* are dispositive here, plaintiff's complaint also fails to articulate a legal basis for relief against Kuberiet and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). As stated *supra*, nowhere does Plaintiff articulate any actions or inactions on Kuberiet's part that violated plaintiff's civil rights.

Because plaintiff's complaint contains no factual allegations describing how Kuberiet violated plaintiff's rights. It only describes facts performed by the Woodbridge Police Department Defendants and then vaguely and without support, claims that Kuberiet abused his prosecutorial power. This is legally insufficient to state claim pursuant to Fed. R. Civ. P. 12(b)(6), and plaintiff's complaint should be dismissed on this basis as well.

## POINT V

**PLAINTIFF'S CLAIM AGAINST FIRST ASSISTANT MIDDLESEX COUNTY PROSECUTOR CHRISTOPHER KUBERIET SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO SERVE A NOTICE OF TORT CLAIM WITHIN NINETY DAYS OF THE ACCRUAL OF HIS CLAIM.**

The New Jersey Tort Claims Act requires that all actions brought against a public entity or a public employee be preceded by providing the public employee or public entity with notice of one's claims. N.J. Stat. Ann. § 59:8-3. Notice must be filed with the appropriate public entity within ninety days of a claim's accrual or the claimant will be "forever barred." N.J. Stat. Ann. § 59:8-8. The Supreme Court of New Jersey has held that "a claim accrues on the date of the accident or incident that gives rise to any injury, however slight." *Beauchamp v. Amedio*, 164 N.J. 111, 123

(2000). Fundamental to the Court's holding is the notion that "once an injury is known, even a minor one, the ninety day notice is triggered." *Id.* at 122.

The purpose of the ninety-day deadline is to "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *Lutz v. Twp. of Gloucester*, 153 N.J. Super. 461, 466 (App. Div. 1977). If the Plaintiff fails to file a notice of claim within ninety days, the claimant may request leave to file a late notice within one year of the incident giving rise to Plaintiff's claim. *See* N.J. Stat. Ann. § 59:8-9.

A claimant may seek leave, by motion, to file a late claim within one year of the date his or her claim accrued. N.J. Stat. Ann. § 59:8-9. After the one-year period expires, the judge is without jurisdiction or discretion to relieve the claimant from his failure to file a timely notice of claim. *Iaconianni v. N.J. Turnpike Auth.*, 236 N.J. Super. 294 (App. Div. 1989), *certif. denied*, 121 N.J. 592 (1990). A cause of action accrues when "any wrongful act or omission resulting in an injury, however slight, for which the law provides a remedy, occurs." *Beauchamp, supra*, 164 N.J. at 116. More than one year has passed since the accrual of this claim.

A notice of claim that is filed beyond the ninety-day time frame "without leave from court is a nullity." *Priore v. State*, 190 N.J. Super. 127, 130 (App. Div. 1983), <u>overruled on other grounds</u>, *Moon v. Warren Haven Nursing Home*, 182 N.J. 507 (2005). Moreover, such a late filing without obtaining permission from the court "does not confer jurisdiction upon the court to grant leave to file a late notice of claim beyond the one year period." *Id.*

Here, Plaintiff alleges that an incident occurred on February 5, 2019. *See* Exhibit A ¶ 41-45. Thus, Plaintiff was required by N.J. Stat. Ann. § 59:9-8 to file a notice of tort claim with each public entity they intended to sue by May 16, 2019. Plaintiff failed to do so. Now that time has

17

elapsed, pursuant to N.J. Stat. Ann. § 59:8-9, the Plaintiff's claims must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Defendant, Christopher Kuberiet's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) be granted and all claims against these Defendant be dismissed with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Jordynn Jackson
      Jordynn Jackson
      Deputy Attorney General