Daniel W. Sexton, Esq, AIN 1021992
329 Pacific Avenue
Jersey City, NJ O7304
(201) 406 – 9960
DanielSextonEsq@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------------

NIJEER PARKS
    Plaintiff

vs

JOHN E. McCORMACK, MAYOR OF
WOODBRIDGE, in his personal and
official capacity, ROBERT HUBNER,
DIRECTOR OF THE WOODBRIDGE POLICE,
n his personal and official capacity, CITY OF
WOODBRIDGE POLICE
OFFICER, ANDREW LYSZK, and
WOODBRIDGE POLICE SGT.
JOSEPH LICCIARDI  and
WOODBRIDGE POLICE OFFICERS
JOHN AND JANE DOE, 1 – 20
being as yet unknown actors, MIDDLESEX
DEPARTMENT OF CORRECTIONS, JOHN and
JANE DOEs 1-20, being unknown
actors, MIDDLESEX COUNTY
PROSECUTOR, ACTING
PROSECUTOR, CHRISTOPHER
KUBERIET, in his personal and
official capacity, and ASSISTANT
MIDDLESEX COUNTY
PROSECUTOR PETER
NASTASI,   in his personal and
official capacity,  and John and Jane
Does 20 – 40 being as yet unknown
individuals in the Office of the
Middlesex Prosecutor , in their
personal and official capacities, and
IDEMIA, Inc.'s, being the maker
of the facial recognition software
and  "ABC CORPORATION,
being an as yet unknown seller or

**CIVIL ACTION**
**No: 2:21-cv-04021 MCA LDW**

**SECOND AMENDED
COMPLAINT AND DEMAND
FOR TRIAL BY JURY**

servicer of the facial recognition
programs.
                    Defendants

_____

Plaintiff, NIJEER PARKS, by and through his attorney, Daniel W.

Sexton, Esq. LLC complains of the DEFENDANTS as follows

### Introduction

Plaintiff, a Black male who had no involvement at criminal activity in Woodbridge,

was falsely arrested because of the obviously false match of a biased and inaccurate facial

recognition technology.  Plaintiff  seeks redress for the cascade of horribles following from

this misuse of  biased technology- that is for being wrongly  charged with multiple serious

crimes, with being arrested and incarcerated in a manner which subjected him to cruel and

unusual punishment, and with being maliciously prosecuted by being threatened with 20

years in prison  The wrongful treatment of plaintiff violated his rights as a citizen of the

United States of America and the State of New Jersey under, *inter alia,* the Fourth

Amendment, the Fourteenth Amendment, and the Eight Amendment of the United States

Constitution as well as the New Jersey analogs to these, viz. the New Jersey Law Against

Discrimination and the New Jersey Civil Rights Act. The tyrannical antinomian conduct of

the defendants under cover of Orwellian technology  shocks the conscience and requires

redress.

## FACTS COMMON TO ALL COUNTS

*Incident at the Hampton Inn on January 26, 2019*

1. On January 26, 2019, the Woodbridge Police responded to the Hampton Inn after being called to investigate a suspected shoplifter who was staying in the hotel.

2. The Woodbridge police responded and questioned the suspect, obtaining from him his putative Driver's License from Tennessee and other items.

3. The Woodbridge Police began to effectuate an arrest on the suspect when he broke lose, fled while shedding a sneaker and then refused to respond to officers with weapons drawn and, instead, attempted to hit a police officer with a Hertz rental car that the suspect had rented.

4. The description of the wanted suspect indicated that he was "a black male, approximately 5"10."

5. Suspect was wanted for eleven offenses, seriatim, (a) shoplifting, (b)aggravated assault with a weapon, hindering apprehension or prosecution, (c)exhibiting a false governmental document, (d) possession of CDS under 50gs, (e) use or possession of drug paraphernalia, (f) leaving the scene of an accident, (g)reckless driving, (h ) resisting arrest, (i)eluding, (j) obstructing a governmental function, (k)possession of a weapon.

6. The Tennessee Driver's License taken from the suspect with the name Jamal Owens, which had indicated that the bearer was 6"2 came back as "not on file."

7. Richard Charenenco, the hotel clerk who called the police after observing the

alleged shoplifting, asserted that the picture on the DL was that of the suspect as did the Hertz Rental Car clerk.

8.   Numerous other eyewitnesses had seen the suspect and were known to the police.

9.   The Woodbridge police also had numerous personal items of the suspect to provide forensic evidence to identify the suspect and these included:

    a.   Sneaker that came off when suspect fled;

    b.   Sprint sim card;

    c.   Dunkin donuts receipt;

    d.   Assorted candy;

    e.   Clear eye drops;

    f.   Fake TN DL;

    g.   Dark stout cigar pack;

    h.   Sweet aromatic cigar pack;

    i.   Suspected marijuana;

    j.   Marijuana grinder;

    k.   Empty water bottle that suspect had drunk;

    l.   Rental agreement

10.  Despite all of this evidence, upon information and belief, the finger prints and DNA evidence was either suppressed or maliciously ignored and were, upon information and belief, neither produced to Plaintiff nor preserved

11.  The car driven by the suspect was also found and was available for forensic tests but again either no fingerprints and no DNA tests were obtained, of if they were obtained, they were never produced or disclosed.

*Wrongful Issuance of Warrant of Arrest for Plaintiff*

12. Upon information and belief, Detective Santiago Tapia  of the Woodbridge Police Department,  sent the photo from the fake license to the Regional Operations Intelligence Center  (ROIC)  and the New York State Intelligence Center (NYSIC)  for facial recognition analysis.

13. Upon information and belief, the photo from the fake license resulted in a so called  "high profile" match to Nijeer Parks.

14. Upon information and belief, this match was never subjected to an in person line up nor to a photo lineup.

15. The match from the facial recognition software was never checked against Plaintiff's fingerprints and DNA which are on file from his prior history and which would have been readily accessible to Defendants.

16. Defendants should have obtained fingerprints of the suspect which would have been abundantly present.

17. Defendants should have obtained DNA of the suspect from additional abundant sources, e.g. the water bottle thrown by suspect after having been drunk.

18. Defendants failed to show witnesses pictures of the plaintiff prior to swearing out the criminal complaint and seeking a warrant.

19. Defendants failed to obtain the DNA and fingerprints of plaintiff which were available.

20.  Upon information and belief, Defendant police department relied solely on faulty and illegal facial recognition technology accessed through an intelligence sharing office in New York state.

21.   Upon information and belief and as shown by public records, the New York
      State Intelligence Center (NYSIC) has since 2018 had a contract to use
      IDEMIA, Inc.'s "MorphoBIS 5.0 Product Suite" of facial recognition software.

22.   Indemia Inc., is a multinational corporation, upon information, doing business
      in the state of New Jersey

23.   Upon information and belief, IDEMIA, Inc.' s product was sold and
      maintained by an unknown private entity or entities.

24.   Facial recognition technology is not reliable.

25.   Indeed, a definitive study by the National Institute of Standards and
      Technology found that African Americans were up to 100 times more likely
      than white men to be misidentified by tested face recognition systems.
      https://www.washingtonpost.com/technology/2019/12/19/federal-study-
      confirms-racial-bias-many-facial-recognition-systems-casts-doubt-their-
      expanding-use/; See
      https://nvlpubs.nist.gov/nistpubs/ir/2019/NIST.IR.8280.pdft

26.   Thus the failure of the governmental defendants to corroborate the facial
      recognition match with any other plentiful evidence available and which was all
      exonerating- that plaintiff is  5'7",  that the fingerprints and DNA were not
      checked, and eye witnesses were not used, alibi evidence not reviewed.-  shocks
      the conscience and indicates either intentional wrongdoing or deliberate
      indifference.

27.   The facial recognition match was so flimsy, so unreliable, and was known or
      should have been known to the police officers to be biased against African
      Americans, that no reasonable police officer could think it constituted probable

cause to arrest plaintiff.

28. The match made to Plaintiff by the facial recognition software through the Regional Operations Intelligence Center (ROIC) and the New York State Intelligence Center (NYSIC) for facial recognition was never checked against Plaintiff's finger prints and DNA which are on file from his prior history and which would have been readily accessible to Defendants.

29. Despite this fact, Defendant Woodbridge Police Officer Andrew Lyszk, with Defendant Sgt. Joseph Licciardi having approved same, swore out a criminal complaint and warrant, Warrant #2019000156, for the arrest of Plaintiff.

30. Upon information and belief, the police officer knowingly and deliberately or with a reckless disregard for the truth, made false material statements or material omissions that created a falsehood in applying for the warrant.

31. PO Lyszk has been credibly accused of use of excessive force and abuse of police powers in the past.

32. The misconduct of the Woodbridge Police defendants is a result, *inter alia,* of failure to train, negligent hiring, failure to supervise, failure to discipline, and these failures were all the result of the actions or omissions of Mayor McCormack and or Police Director Hubner.

33. Specifically, the adoption and use of facial recognition technology in order to make an arrest and charge an individual with crimes by the Woodbridge Defendants, either by explicit approval or tacit approval, is illegal, unconstitutional and actionable.

34. Upon information and belief, Defendant Peter Nastasi, Assistant County Prosecutor, County of Middlesex, in his personal or official capacity or some

other person in the Middlesex County Prosecutor's Office conducted a faulty

initial investigation or failed to investigate in any manner the proposed issuance

of a warrant and therefore, authorized the issuance of the warrant even though

he knew or should have known that there was no basis for issuance of same so

that this authorization rises to an intentional wrong.

35. The wrongful acts of the Middlesex County Prosecutor Defendants are distinct

from the immune prosecutorial functions..

36. Indeed, the wrongful acts of the Middlesex County Prosecutor Defendants are,

upon information and belief, relate to investigative functions normally

performed by a detective or police officer, *Buckley v. Fitzsimmons,* 509 U.S. 259

(1993).

37. To wit, the Middlesex County Prosecutor cooperated and joined with the

Woodbridge Police Defendants in utilizing the facial recognition technology in

an illegal and unconstitutional manner.

38. The Middlesex Prosecutor's Office, its named officials or some other as of yet

unknown officials,  acted wrongly  either out of  personal motive, with

malicious intent, or in excess of its  jurisdiction and so the assertion of

immunity is precluded.

***Plaintiff's Wrongful Arrest***

39. Plaintiff is an African American man, residing at 485 E.19[th] Street, Apartment

#3G, Patterson, NJ, , at the time of the actions complained of

40. On or about January 30, 2019,   Plaintiff's grandmother called him while he

was at work to tell him that a warrant for his  arrest had been issued out of

Woodridge, NJ, and that the Patterson Police had been there trying to serve

the warrant.

41. Upon hearing this from his grandmother, Plaintiff called the Patterson Police Department which referred him to the Woodbridge Police Department causing him to call the Woodbridge Municipal Court Clerk and inquired about the Warrant.

42. Plaintiff was told that there had been a matter involving an incident in a hotel in Woodbridge and that a summons had been issued for his arrest in relation to it.

43. Plaintiff told the Municipal Clerk that he had never been in Woodbridge in his entire life and, indeed, that he did not know where it even was.

44. At the time, plaintiff did not even have a driver's license, and had never had a driver's license prior to June of 2019, and the Plaintiff told the Clerk this information as well.

45. Defendants failed to provide plaintiff with the time and date of the alleged crime and so he was not able to provide his alibi until discovery in the criminal matter gave him the details about the incident on January 26, 2019, at the Hampton Inn.

46. Plaintiff was advised to "come down and clear the matter up," or words to that effect.

47. Therefore, on or about February 5, 2019, plaintiff was driven by his cousin to Woodbridge, NJ, in order to clear up what he knew to be matter of mistaken identity.

48. Plaintiff went to the municipal Clerk and explained that he was there to clear up the warrant for his arrest that was clearly an instance of mistaken identity.

49. The clerk directed the Plaintiff to go to the Woodbridge Police Station which was located in the same municipal complex.

50. Plaintiff, therefore, went to the Woodbridge Police window and explained that he was there to clear up what was clearly a matter of mistaken identity.

51. However, instead of being questioned or heard about this lack of involvement with the incident, Plaintiff was put under arrest by being placed in handcuffs and taken into custody.

52. Plaintiff was not read his Miranda warnings.

53. Having been taken into the offices of the Woodbridge Police Department, Plaintiff was peppered with accusations such as: "you were the one who tried to run over a police officer at the Hampton Inn, "etc.

54. At no time did defendants seek any information from Plaintiff but merely hurled accusations at hm.

55. As he had previously told the clerk, Plaintiff told the interrogators that he had never had a driver's license, that he had never owned a car, and that he had never even been in Woodbridge.

56. As the verbal harassment got more intense and hostile, the police investigators tried to have Plaintiff moved to a room in the back of the police offices out of range of the camera causing plaintiff to fear that he was going to be tortured.

57. In order to avoid torture, plaintiff feigned an asthmatic attack falling to the ground so that he could not be moved to the back room.

58. As a result of this feigned attack, the EMS was called, and plaintiff managed to avoid being beaten at the police headquarters.

59. While being examined by the EMS, Plaintiff told the EMT that he feared he

was going to be beaten up and asked her to take a picture of him to document his state.

60. After the EMS left, the defendant police officers gave up on their attempt to move him to a room in the back without cameras and he was processed and transferred to the Middlesex County Corrections Center even though there was no evidence, no probable 7cause, no reasonable suspicion.

**_Plaintiff's Unlawful Confinement In Cruel and Unusual Conditions (8Th)_**

61. After his wrongful arrest, hostile and threatening interrogation, the Middlesex Corrections officers continued the abuse of plaintiff by keeping him in functional solitary confinement by keeping Plaintiff in intake for his first week at the jail.

62. Because he was kept in intake, Plaintiff took meals alone.

63. Because he was kept in intake, Plaintiff was denied recreation outside.

64. Because he was kept in intake, Plaintiff was denied recreation opportunities on the regular tiers, e.g., television, library, conversation.

65. While wrongly kept in intake for an extended period, Plaintiff was in fear of physical abuse as the Corrections Officers verbally threatened him with excessive force because, they wrongly asserted, "he had attacked a fellow officer."

66. Plaintiff was only transferred to a tier after his second court appearance seven days later after, upon information and belief, his Public Defender intervened.

67. This extended stay in intake was contrary to best practices in prison management, and, upon information and belief, was contrary to the standards and procedures of the Middlesex Corrections Facility.

68. The Middlesex Corrections Facility has a history of engaging in cruel and unusual punishment violative of the 8th Amendment as seen, *inter alia,* in its litigation history.

### *Insistence on Prosecution by Prosecutor Who Knew of Absence of Factual Basis*

69. Plaintiff's first court appearance occurred three days after his wrongful arrest.

70. At that time, Plaintiff's testified in open court that he had never driven a car, had never been in Woodbridge, and that this was a case of mistaken identity.

71. Due to the misconduct of the police defendants and the utter and complete failure of the Middlesex Prosecutor's office to do an appropriate investigation or to insist on an appropriate investigation by the Woodbridge defendants, Plaintiff was returned to the Middlesex Jail where he remained until the next court appearance about a week later.

72. The conduct of the Middlesex Prosecutor and its agents was so misguided that it can only be an expression of acted out of personal motive, with malicious intent, or in excess of his jurisdiction.

73. Again, at this second court appearance, Plaintiff asserted that this was a case of mistaken identity- telling the court again that he does not drive and that he had never been to Woodbridge prior to responding there because of the wrongful summons.

### *Personal Motive, Malice, or In Excess of Jurisdiction*

74. The Middlesex County Prosecutor knew or should have known that the facial recognition match was based on faulty technology which is biased against African Americans and that Plaintiff was innocent because all of the other

evidence was exonerating.

75. Therefore, the Middlesex County Prosecutor should never have authorized the issuance of the arrest warrant against Plaintiff.

76. Moreover, after the arrest of Plaintiff, the Middlesex County Prosecutor intentionally or with reckless disregard refused to consider all the other evidence which was exonerating.

77. After receipt of the discovery from the Prosecutor, plaintiff presented to the Defendant prosecutor an iron clad alibi, namely the documents from Western Union to wire money to his fiancé which plaintiff was completing and processing in Paterson at the same time that the incident at the Hampton Inn was taking place.

78. Despite this, the Middlesex County Prosecutor and the Woodbridge Defendants continued to argue that Plaintiff's incarceration should be continued even though no evidence tied him to the crime.

79. Pressure was put on Plaintiff by the Prosecutor and the court to accept a plea deal where he would serve an extended sentence of many years.

80. Plaintiff was threatened with a draconian sentence of over 25 years to get him to take the plea deal.

81. The targeting of plaintiff, his arrest, and the abusive aspects of his detention together with the insistence on proceeding with the prosecution all occurred without a scintilla of evidence to support it.

82. Plaintiff was released but only due to the new no-bail rules

83. Once out of jail, Plaintiff, was terrified that some inexplicable conspiracy or vendetta would destroy him, so he retained an expensive and talented criminal

lawyer.

84. However, despite this, the defendants kept Plaintiff in a state of apprehension for almost a year, refusing to drop charges, demanding a plea to lesser included charges, and promising that he would be tried and convicted and that if convicted he would incarcerated with no chance of release for at least 20 years.

85. This pre-trial period constitutes a seizure under the Fourth Amendment and a Due Process violation, Procedural and Substantive, under the Fourteenth Amendment.

86. The charges were only dropped on the eve of trial in late November 2019, when the plaintiff insisted to the court that he was going to trial because he was innocent and because there was no evidence.

87. Plaintiff suffered physical and emotional pain because of the wrongful acts of defendants.

88. Plaintiff also suffered financial loss and disruption since he was "absent without leave" from his job while wrongly incarcerated.

89. Plaintiff continued and continues to suffer from anxiety and distress even after all charges were finally dismissed by the court when the Middlesex Prosecutor was reprimanded in court for this wrongful arrest, confinement and prosecution.

90. The actions of the defendants were either willfully malicious or were done in reckless disregard and are actions that shock the conscience.

## COUNT I

### AS AND FOR A FIRST CAUSE OF ACTION FOR   MALCIOUS PROSECUTION UNDER THE FOURTH AMENDMENT

91.  Plaintiff hereby re-alleged and incorporates herein by reference all of the prior paragraphs as though the same were fully set forth herein.

92.  The individuals, Defendant Woodbridge Police Officer Andrew Lyszk, with Defendant Sgt. Joseph Licciardi, Defendant Peter Nastasi, Assistant County Prosecutor, acted in their individual capacities and under color of state law.

93.  The actions of these individuals violated clearly established rights of plaintiff, including but not limited to the right to be free from wrongful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States and the right to Procedural and Substantive Due Process and fair treatment during arrests and detention, violations of the First, Fourth and  14th Amendments to the Constitution of the United States.

94.  This cause of action is cognizable to this court through Section 1983 of the United States Code and through the New Jersey Civil Rights Act,  N.J.S.A., 10:6.2.

95.  Thus, the elements of this cause of actions ((1) Defendants initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the Defendants acted maliciously or for a purpose other than bringing the Defendants to justice)  are present.

## COUNT II

### AS AND FOR A SECOND CAUSE OF ACTION FOR   A VIOLATION OF EQUAL PROTECTION

96.  Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 95  above as if set forth in full.

97.  Defendants acted either intentionally or with reckless disregard when
exhibiting anti-black animus which was a substantial motivating factor leading
to the wrongful acts of defendants.

98.  The anti-black animus is evidenced in the fixated reliance on the facial
recognition technology and lack of any corrective checks or balances for this
technology which is known to be unable to reliably identify African American
faces.

99.  The use of the faulty recognition system together with the suppression of all of
the exonerating evidence (obvious height disparity, failure to use DNA, failure
to use fingerprints, failure to allow for alibi evidence etc.) constitutes
intentional wrongdoing or exhibits reckless disregard.

100.  These wrongful acts of Defendants constitute an egregious violation of the
guarantee to Equal Protection under the Law which is contained in the
Fourteen Amendment and which was enacted to protect African Americans
from this type of mistreatment.

101.  Plaintiff, therefore, asserts a claim under Section 1983 of the United States
Code and  the New Jersey Civil Rights Act, *N.J.S.A.*  10:6.2.

102.  *Inter alia*, the wrongful treatment of Plaintiff was an extreme case of racial
profiling.

103.  Racial profiling is considered to be an Equal Protection claim- essentially that
Plaintiff was detained, arrested, and charged primarily because he is or appears
racially African or African American, a violation, inter alia, of the Fourteenth
Amendment to the Constitution of the United States.

104.  The defendant's actions had a discriminatory effect and (were motivated by a

discriminatory purpose.

105.  Stated somewhat differently, Plaintiff is a member of a protected class and he

was treated differently from similarly situated individuals in an unprotected

class.

## COUNT III

### AS AND FOR A THIRD CAUSE OF ACTION FOR EXCESSIVE FORCE,

106.  Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 105 above as if set forth in full.

107.  The police action against plaintiff was not justified and was excessive.

108.  Excessive force refers to force in excess of what a police

officer reasonably believes is necessary.

109.  No reasonable officer would be able to consider that it was reasonable to

issue an arrest warrant on the basis of facial recognition technology that is

known to be faulty and untrustworthy.

110.  No reasonable officer would believe that it was necessary to enforce an arrest

warrant when plaintiff presented himself to clear up the case of mistaken

identity.

111.  No reasonable officer would have  been involved in the terrorizing of

Plaintiff through this entire ordeal (from refusing to consider Plaintiff

assertions that he did not drive, that he had never been to Woodbridge prior to

responding to the summons, that the fact that all the forensics exonerated

Plaintiff (DNA, finger prints, etc. )).

112.   No reasonable officer would believe it reasonable to threaten plaintiff with

physical harm.

113.   The use of Excessive Force by Defendants is a violation of the Fourth

Amendment to the Constitution of the United States of America and the

Eighth Amendment.

114.   All of the other officers who observed the wrongful treatment of Plaintiff are

also liable for not preventing the wrongdoers from using excessive force

115.   The actions of defendants were such to put plaintiff in a reasonable concern

for his physical safety as he was in apprehension of being physically assaulted.

116.   This use of excessive force was consistent with or caused by the training,

supervision, and policies of the defendant entities, thus  creating *Monell*

liability.


## COUNT IV

### WOODBRIDGE TOWNSHIP IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED BY A MUNICIPAL POLICY OR CUSTOM

117.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 116 above as if set forth in full.

118.   The illegal and unjust treatment of plaintiff was caused by policies, customs,

and practices of the Woodbridge Township Police Department.

119. Woodbridge Township allowed the use of facial recognition software and allowed officers to disregard exonerating evidence despite the clear anti-black bias consequences.

120. Woodbridge Township failed to supervise the use of facial recognition by its police officers to attempt to curb the racially discriminatory effect of facial recognition.

121. Woodbridge Township failed to properly train its police officers in the use of facial recognition technology to prevent it from causing racially tinged injustices.

## COUNT V

**THE MIDDLESEX COUNTY PROSECUTOR IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED OR WERE THE RESULT OF PERSONAL MOTIVE, MALICIOUS INTENT OR IN EXCESS OF ITS JURISDICTION**

122. Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 117 above as if set forth in full.

123. The illegal and unjust treatment of plaintiff was caused by policies, customs, and practices of the Middlesex Prosecutor's Office.

124. In its investigatory function, the Middlesex Prosecutor's Office allowed the use of facial recognition software and allowed prosecutors to disregard exonerating evidence despite the clear anti-black bias consequences.

125. The Middlesex County Prosecutor failed to supervise the use of facial recognition by its assistant prosecutors to attempt to curb the racially discriminatory effect of facial recognition.

126.   The Middlesex County Prosecutor failed to properly train its assistant

prosecutors in the use of facial recognition technology to prevent it from

causing racially tinged injustices.

127.   The Middlesex County Prosecutor failed to appropriately train, supervise and

to discipline its prosecutors who misused facial recognition technology and or

otherwise engaged in a prosecution driven by personal animus,  malice or

knowingly outside its purview.

## COUNT VI

## AS AND FOR A SIXTH CAUSE OF ACTION FOR CRUEL AND UNUSUAL PUNISHMENT BY DEFENDANT MIDDLESEX COUNTY CORRECTIONS DEPARTMENT

128.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 127 above as if set forth in full.

129.   *Inter alia*, Section 1983 and  the New Jersey Civil Rights Act gives a cause of

action to New Jersey Citizens for violation of the Eight Amendment to the

Constitution of the prohibits cruel and unusual punishment.

130.   Defendant Middlesex County Corrections Department kept plaintiff  in a

functional equivalent to solitary confinement for the first part of his

incarceration, for at least six days after  his wrongful arrest which is *per se* cruel

and unusual.

131.  Plaintiff was put in fear of physical harm during his time in intake when

Corrections Officers harassed him because he was alleged to have tried to

assault another officer.

132.  The identity of the officers responsible for this mistreatment is unknown at

this time.

133.  Plaintiff remained in fear of physical harm during his entire incarceration as

he was subjected to continuous threats of illegal and unconstitutional violence.

134.  Plaintiff was put in fear and apprehension that his innocence was of no

import even though obvious and manifest  because  he had never driven a car,

had never been to Woodbridge,  that the fingerprints did not match, and the

DNA did not match.

135.  The cruel and unusual punishment experienced by plaintiff at the Middlesex

County Corrections Department was a was caused by policies, customs, and

practices of the Middlesex County Corrections Department.

136.  The Middlesex County Corrections Department failed to supervise, train,

and/or discipline its officers so that it caused the unjust conditions of

plaintiff's confinement.

## COUNT VII

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR CIVIL
CONSPIRACY UNDER SECTION  1985 OF THE UNITED STATES
CODE AND UNDER THE  JERSEY CIVIL RIGHTS LAW (N.J.A.S 10-
12.1 et seq.)**

137.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 136 above as if set forth in full.

138.   Defendants engaged in a conspiracy for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of

the laws, or of equal privileges and immunities under the laws; and

139.   Defendants acted in furtherance of the conspiracy

140.   Plaintiff was deprived of any right or privilege of a citizen of the United

States.


## COUNT VII

### THE COUNTY OF MIDDLESEX IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED BY A POLICY OR CUSTOM

141.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 14020 above as if set forth in full.

142.   The cruel and unusual punishment experienced by plaintiff at the Middlesex

County Corrections Department was a was caused by policies, customs, and

practices of the Middlesex County Corrections Department.

143.   The Middlesex County Corrections Department failed to supervise, train,

and/or discipline its officers so that it is liable for the unjust conditions of

plaintiff's confinement.

## COUNT VIII

### AS AND FOR AN EIGHTH CAUSE OF ACTION CIVIL CONSPIRACY

144.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 112 above as if set forth in full.

145.   Defendants engaged in a conspiracy for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

146.   Section 1985 of the United States Code and The New Jersey Civil Rights Act provide that plaintiff can bring this claim

### COUNT VIII
### AS AND FOR A EIGHTH CAUSE OF ACTION FOR NEGLIGENT MANUFACTURE OR SALE

147.Plaintiff repeats and re-alleges all of the factual averments in paragraphs one   through 146 above as if set forth fully herein.

148.Upon information and belief and as shown by public records, the New York State Intelligence Center (NYSIC) has since 2018 had a contract to use IDEMIA, Inc.'s "MorphoBIS 5.0 Product Suite" of facial recognition software

149..Indemia Inc., is a multinational corporation, upon information, doing business in the state of New Jersey.

150.Upon information and belief,  the IDEMIA, Inc., s product was sold and maintained by an unknown private entity or entities.

151. Indemia knew or should have known that its facial recognition product is flawed yet it failed to advise its customers and users of this fact.

152. The negligence of the manufacturer(s), designer(s), and seller(s) of the facial recognition software is a legal cause of the harm suffered by plaintiff.


## COUNT IX
## AS AND FOR A NINTH  CAUSE OF ACTION, THE MANUFACTURER(S), DESIGNER(S), and SELLER(S) OF THE FACIAL RECOGNITION TECHNOLOGY EXHIBITED MALICE OR SHOCKING DISREGARD SO THAT PUNITIVE DAMAGES ARE APPROPRIATE

153. Plaintiff repeats and re-alleges all of the factual averments in paragraphs one   through 152 above as if set forth fully herein.

154. In fact, upon information and belief, Indemia made false claims for the accuracy of the software.

155. Therefore, exemplary damages must be imposed on these defendants.


**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendants as follows:

A.  Damages are mental and emotional anguish, counsel fees in this and exemplary damages.

B.  Compensatory damages for Plaintiff' lost wages as well as for his psychological and emotional distress and damages, loss of standing in his community, damage to his reputation, and his family's un-reimbursed out of pocket expenses incurred in response to these circumstances;

C.  Exemplary Damages because of the outrageous conduct of defendants,

D.  Statutory interest;

E.  Costs; and

F.   Reasonable attorney fees enhanced by a *Rendine* factor.

G.   All other such relief as the Court finds just and reasonable.

Respectfully submitted,

Date: June 1, 2021

Daniel W. Sexton,  Esq.
Counsel for Plaintiff Nijeer Park

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims pled herein.

Respectfully submitted

By: Daniel W. Sexton, Esq.
AIN 1021992

Date: June 1, 2021