Daniel W. Sexton, Esq, AIN 1021992
229 New Centre Road
Hillsborough, NJ 08844
(201) 406 – 9960
DanielSextonEsq@gmail.com

---

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

-----------------------------------------------------------------

_____

NIJEER PARKS
     Plaintiff

vs

JOHN E. McCORMACK, MAYOR OF
WOODBRIDGE, in his personal and
official capacity, ROBERT HUBNER,
DIRECTOR OF THE WOODBRIDGE POLICE,
n his personal and official capacity, CITY OF
WOODBRIDGE POLICE
OFFICER, ANDREW LYSZK, and
WOODBRIDGE POLICE SGT.
JOSEPH LICCIARDI  and
WOODBRIDGE POLICE OFFICERS
JOHN AND JANE DOE, 1 – 20
being as yet unknown actors, MIDDLESEX
DEPARTMENT OF CORRECTIONS, JOHN and
JANE DOEs 1-20, being unknown
actors, MIDDLESEX COUNTY
PROSECUTOR, ACTING
PROSECUTOR, CHRISTOPHER
KUBERIET, in his personal and
official capacity, and ASSISTANT
MIDDLESEX COUNTY
PROSECUTOR PETER
NASTASI,   in his personal and
official capacity,  and John and Jane
Does 20 – 40 being as yet unknown
individuals in the Office of the
Middlesex Prosecutor , in their
personal and official capacities, and
IDEMIA, Inc.'s, being the maker
of the facial recognition software
and  "ABC CORPORATION,
being an as yet unknown seller or

**CIVIL ACTION**
**No: 2:21-cv-04021 MCA LDW**

**SECOND AMENDED
COMPLAINT AND DEMAND
FOR TRIAL BY JURY**

servicer of the facial recognition
programs.
                        Defendants

_____

Plaintiff, NIJEER PARKS, by and through his attorney, Daniel W.

Sexton, Esq. LLC complains of the DEFENDANTS as follows

## Introduction

Plaintiff, a Black male who had no involvement at criminal activity in Woodbridge,

was falsely arrested because of the obviously false match of a biased and inaccurate facial

recognition technology.  Plaintiff  seeks redress for the cascade of horribles following from

this misuse of  biased technology- that is for being wrongly  charged with multiple serious

crimes, with being arrested and incarcerated in a manner which subjected him to cruel and

unusual punishment, and with being maliciously prosecuted by being threatened with 20

years in prison. The defendants knew or should have known that the bad actor was

Barrington Walker, not plaintiff but the defendants intentionally or with reckless disregard

to a degree that shocks the conscience suppressed and withheld this fact and the data which

proved this.  The wrongful treatment of plaintiff violated his rights as a citizen of the United

States of America and the State of New Jersey under, *inter alia,* the Fourth Amendment, the

Fourteenth Amendment, and the Eight Amendment of the United States Constitution as

well as the New Jersey analogs to these, viz. the New Jersey Law Against Discrimination and

the New Jersey Civil Rights Act. The tyrannical antinomian conduct of the defendants under

cover of Orwellian technology  shocks the conscience and requires redress.

## FACTS COMMON TO ALL COUNTS

*Incident at the Hampton Inn on January 26, 2019*

1. On January 26, 2019, the Woodbridge Police responded to the Hampton Inn after being called to investigate a suspected shoplifter who was staying in the hotel.

2. The Woodbridge police responded and questioned the suspect, obtaining from him his putative Driver's License from Tennessee and other items.

3. The Woodbridge Police began to effectuate an arrest on the suspect when he broke lose, fled while shedding a sneaker and then  refused to respond to officers with weapons drawn and, instead,  attempted to hit a police officer with a Hertz rental car that the suspect had rented.

4. The description of the wanted suspect indicated that he was "a black male, approximately 5"10."

5. Suspect was wanted for eleven offenses, seriatim,  (a) shoplifting, (b)aggravated assault with a weapon, hindering apprehension or prosecution, (c)exhibiting a false governmental document, (d) possession of CDS under 50gs, (e) use or possession of drug paraphernalia, (f) leaving the scene of an accident, (g)reckless driving,   (h ) resisting arrest, (i)eluding, (j) obstructing a governmental function, (k)possession of a weapon.

6. The Tennessee Driver's License taken from the suspect with the name Jamal Owens, which had indicated that the bearer was 6"2 came back as "not on

file."

7.  Richard Charenenco, the hotel clerk who called the police after observing the alleged shoplifting, asserted that the picture on the DL was that of the suspect as did the Hertz Rental Car clerk.

8.  Numerous other eyewitnesses had seen the suspect and were known to the police.

9.  The Woodbridge police also had numerous personal items of the suspect to provide forensic evidence to identify the suspect and these included:

    a.  Sneaker that came off when suspect fled;

    b.  Sprint sim card;

    c.  Dunkin donuts receipt from earlier the morning of the incident from a store on Gun Hill Road, the Bronx, NY;

    d.  Assorted candy;

    e.  Clear eye drops;

    f.  Fake TN DL;

    g.  Dark stout cigar pack;

    h.  Sweet aromatic cigar pack;

    i.  Suspected marijuana;

    j.  Marijuana grinder;

    k.  Empty water bottle that suspect had drunk;

    l.  Rental agreement

10. The receipt from the Bronx was an important indicator that the actor was from NY.

11. On the day of the underlying incident, that is January 26, 2019, Detective Quesada as I.D. Detective working with Detective Santiago Tapia as the C.I. D. Detective,

secured the evidence at the scene and prepared it to be tested.

12. Specifically, he "lifted 3 prints off glass[door]" and "five usable prints lifted" from the rental car.

13. These prints were prepared for AFIS (automated fingerprint identification system).

14. Additionally, Detective Quesada sought DNA tests for various pieces of evidence (water bottle, vape pen in custody on that day).

15. In what was either intentionally wrongful actions or reckless disregard which shocks the conscience in a manner calculated to suppress exonerating evidence, the fingerprints were submitted only pm February 8, 2019, that is eight days after the arrest warrant and Criminal Complaints were issued on January 30 , 2018.

16. In what was either intentionally wrongful actions or reckless disregard which shocks the conscience in a manner, the identification of the actor through the fingerprints as Barrington A. Walker, of 240 West 141st Street, Manhattan, NY was hidden from plaintiff and his lawyer until discovery in this action.

17. In what was either intentionally wrongful actions or reckless disregard to the extent that it shocks the conscience, defendants did not obtain a CODIS (Combined DNA Index) assay until July 30, 2021,   six months after this lawsuit was filed.

18. Shockingly, the defendant police  officers had no training in the use of facial recognition technology, and this constitutes a predicate of *Monell* liability. *Monell v. Department of Social Services*, 436 U.S. 658, (1978) .

19. Shockingly, the defendant police department had no policies regarding the use of facial recognition technology, and this constitutes a predicate of *Monell* liability. *Monell v. Department of Social Services*, 436 U.S. 658,  (1978).

20. Shockingly, there was no supervision of the use by defendant police officers of facial recognition technology, and this constitutes a predicate of *Monell li*ability. *Monell v. Department of Social Services*, 436 U.S. 658,  (1978).

21. Shockingly, there were no regulations nor provisions in the Defendant Police Department for discipline of the misuse of facial recognition technology and this constitutes a predicate of *Monell* liability. *Monell v. Department of Social Services*, 436 U.S. 658,  (1978).

22. Shockingly, no discipline or even re-training was given to the officers who caused this unconstitutional arrest and seizure and prosecution of Plaintiff, and this constitutes a predicate of *Monell* liability. *Monell v. Department of Social Services*, 436 U.S. 658,  (1978).***Wrongful Issuance of Warrant of Arrest for Plaintiff***

23. Upon information and belief, Detective Santiago Tapia  of the Woodbridge Police Department,  sent the photo from the fake license to the Regional Operations Intelligence Center  (ROIC)  and the New York State Intelligence Center (NYSIC)  for facial recognition analysis.

24. Upon information and belief, the photo from the fake license resulted in a so called  "high profile" match to Nijeer Parks.

25. Upon information and belief, this match was never subjected to an in person line up nor to a photo lineup.

26. Although there were as many as ten persons who had eye witnessed the actor at the Hampton Inn , the only identification was done by Patrolman F. Lee, #591, who was told that the 'individual "who was involved in the incident on January 26, 2019"  and  identified him as such without any pretense of using the normal line up procedures.

27. This blatantly improper 'show up" identification, done after  plaintiff had been wrongly arrested, after plaintiff had been wrongly charged, and without any proper safeguards in a manner that violated the Fourth Amendment's  l

challenges to those procedures have focused on four provisions: the Fourth
Amendment's prohibition on unreasonable searches and seizures; the Fifth
Amendment's prohibition of compelled self-incriminating testimony; the
injunction in both the Fifth and Fourteenth Amendments that government not
deprive persons of life or liberty without due process of law; and the Sixth
Amendment's guarantee of assistance of counsel had been brought violated the
plaintiff's .

28. The match from the facial recognition software was never checked against
Plaintiff's fingerprints and DNA which are on file from his prior history and
which would have been readily accessible to  Defendants.

29.  Upon information and belief, Defendant police department relied solely on
faulty and illegal facial recognition technology accessed through an intelligence
sharing office in New York state.

30.  Upon information and belief and as shown by public records, the New York
State Intelligence Center (NYSIC) has since 2018 had a contract to use
IDEMIA, Inc.'s "MorphoBIS 5.0 Product Suite" of facial recognition software.

31. Indemia Inc., is a multinational corporation, upon information, doing business
in the state of New Jersey.

32. Detective Tapia  intentionally or with shocking and reckless disregard for truth
and for required policy and procedure conducted the unconstitutional
investigation which wrongfully identified him as the criminal actor, but
Detective Tapia also signed out the Arrest Warrant and signed the Affidavit of
Probable Cause.

33. Upon information and belief, IDEMIA, Inc.' s product was sold and

maintained by an unknown private entity or entities.

34. Facial recognition technology is not reliable.

35. Indeed, a definitive study by the National Institute of Standards and Technology found that African Americans were up to 100 times more likely than white men to be misidentified by tested face recognition systems. https://www.washingtonpost.com/technology/2019/12/19/federal-study-confirms-racial-bias-many-facial-recognition-systems-casts-doubt-their-expanding-use/; See https://nvlpubs.nist.gov/nistpubs/ir/2019/NIST.IR.8280.pdft

36. Thus the failure of the governmental defendants to corroborate the facial recognition match with any other plentiful evidence available and which was all exonerating- that plaintiff is  5'7",  that the fingerprints and DNA were not checked, and eye witnesses were not used, alibi evidence not reviewed.-  shocks the conscience and indicates either intentional wrongdoing or deliberate indifference.

37. The facial recognition match was so flimsy, so unreliable, and was known or should have been known to the police officers to be biased against African Americans, that no reasonable police officer could think it constituted probable cause to arrest plaintiff.

38. The match made to Plaintiff by the facial recognition software through the Regional Operations Intelligence Center  (ROIC)  and the New York State Intelligence Center (NYSIC)  for facial recognition was never checked against Plaintiff's finger prints and DNA which are on file from his prior history and which would have been readily accessible to Defendants.

39. Despite this fact, Defendant Woodbridge Police Officer Andrew Lyszk, with Defendant Sgt. Joseph Licciardi having approved same, swore out a criminal complaint and warrant, Warrant #2019000156, for the arrest of Plaintiff.

40. Upon information and belief, the police officer knowingly and deliberately or with a reckless disregard for the truth, made false material statements or material omissions that created a falsehood in applying for the warrant.

41. PO Lyszk has been credibly accused of use of excessive force and abuse of police powers in the past.

42. The misconduct of the Woodbridge Police defendants is a result, *inter alia,* of failure to train, negligent hiring, failure to supervise, failure to discipline, and these failures were all the result of the actions or omissions of Mayor McCormack and or Police Director Hubner.

43. Specifically, the adoption and use of facial recognition technology in order to make an arrest and charge an individual with crimes by the Woodbridge Defendants, either by explicit approval or tacit approval, is illegal, unconstitutional and actionable.

44. Upon information and belief, Defendant Peter Nastasi, Assistant County Prosecutor, County of Middlesex, in his personal or official capacity or some other person in the Middlesex County Prosecutor's Office conducted a faulty initial investigation or failed to investigate in any manner the proposed issuance of a warrant and therefore, authorized the issuance of the warrant even though he knew or should have known that there was no basis for issuance of same so that this authorization rises to an intentional wrong.

45. The wrongful acts of the Middlesex County Prosecutor Defendants are distinct

from the immune prosecutorial functions..

46. Indeed, the wrongful acts of the Middlesex County Prosecutor Defendants are, upon information and belief, relate to investigative functions normally performed by a detective or police officer, *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993).

47. To wit, the Middlesex County Prosecutor cooperated and joined with the Woodbridge Police Defendants in utilizing the facial recognition technology in an illegal and unconstitutional manner.

48. The Middlesex Prosecutor's Office, its named officials or some other as of yet unknown officials, acted wrongly either out of personal motive, with malicious intent, or in excess of its jurisdiction and so the assertion of immunity is precluded.

### Plaintiff's Wrongful Arrest

49. Plaintiff is an African American man, residing at 485 E.19th Street, Apartment #3G, Patterson, NJ, , at the time of the actions complained of

50. On or about January 30, 2019, Plaintiff's grandmother called him while he was at work to tell him that a warrant for his arrest had been issued out of Woodridge, NJ, and that the Patterson Police had been there trying to serve the warrant.

51. Upon hearing this from his grandmother, Plaintiff called the Patterson Police Department which referred him to the Woodbridge Police Department causing him to call the Woodbridge Municipal Court Clerk and inquired about the Warrant.

52. Plaintiff was told that there had been a matter involving an incident in a hotel

in Woodbridge and that a summons had been issued for his arrest in relation to
it.

53. Plaintiff told the Municipal Clerk that he had never been in Woodbridge in his
entire life and, indeed, that he did not know where it even was.

54. At the time, plaintiff did not even have a driver's license, and had never had a
driver's license prior to June of 2019, and the Plaintiff told the Clerk this
information as well.

55. Defendants failed to provide plaintiff with the time and date of the alleged
crime and so he was not able to provide his alibi until discovery in the criminal
matter gave him the details about the incident on January 26, 2019, at the
Hampton Inn.

56. Plaintiff was advised to "come down and clear the matter up," or words to that
effect.

57. Therefore, on or about February 5, 2019, plaintiff was driven by his cousin to
Woodbridge, NJ, in order to clear up what he knew to be matter of mistaken
identity.

58. Plaintiff went to the municipal Clerk and explained that he was there to clear
up the warrant for his arrest that was clearly an instance of mistaken identity.

59. The clerk directed the Plaintiff to go to the Woodbridge Police Station which
was located in the same municipal complex.

60. Plaintiff, therefore, went to the Woodbridge Police window and explained that
he was there to clear up what was clearly a matter of mistaken identity.

61. However, instead of being questioned or heard about this lack of involvement
with the incident, Plaintiff was put under arrest by being placed in handcuffs

and taken into custody.

62. Plaintiff was not read his Miranda warnings until he was in custody and being

questions ed by Detetive Kondracki. .

63. Having been taken into the offices of the Woodbridge Police Department,

Plaintiff was peppered with accusations such as: "you were the one who tried

to run over a police officer at the Hampton Inn, "etc.

64. At no time did defendants seek any information from Plaintiff but merely

hurled accusations at hm.

65. As he had previously told the clerk, Plaintiff told the interrogators that he had

never had a driver's license, that he had never owned a car, and that he had

never even been in Woodbridge.

66. At 11:51 am,  on 2/5/19,  Plaintiff was questioned by Detective Andrew

Kondracki and he advised him of the following exculpatory facts:

    a.   He had never been to Woodbridge  Township prior than driving to the

        Woodbridge in response to the illegal arrest warrant and criminal complaint.

    b.   He had never been to the Hampton Inn or any hotel in Woodbridge Township.

    c.   That Plaintiff had never had a driver's license and had never rented  a car.

    d.   That Plaintiff advised that he had never been the victim of identity theft.

    e.   That he had been with his sons at a basketball game on that day and that at

        home with his family in Patterson.

    f.   That he is not able to run because he was still, at the time, recovering from

        knee surgery the on August 7, 2018, explaining that it was for a torn ACL and a

        torn meniscus.

    g.   Plaintiff offered to give his fingerprints and DNA to exonerate himself during

        his interview.

     h.   That Plaintiff had called the Hampton Inn after he had talked to Woodbridge about turning himself and in conversation with the regional manager there

67. Defendant Kondracki and the Defendant Police Department failed to respond to any of the exonerating evidence presented by Plaintiff in a manner that shocks the conscience.

68. Members of the Defendant Police Department also engaged in a completely bogus and improper identification of plaintiff by PO Lee, the victim of the attempted assault by vehicle by Barrington Walker.

69. To wit,  Lt.  Ng contacted PO Lee and told him that Nijeer Parks, the actor in the incident on January 26, 2019 [sic]  and Lee "observed Mr. Parks  sitting on the rail and identified him as being the suspect…."

70. The failure to even make a pretense of comporting with the due process requirements for  eyewitness testimony, e.g.  lineups done pursuant to established protocols for reducing suggestibility etc.  again, shocks the conscience.

71. As the verbal harassment got more intense and hostile, the police investigators tried to have Plaintiff moved to a room in the back of the police offices out of range of the camera causing plaintiff to fear that he was going to be tortured.

72. In order to avoid torture, plaintiff feigned an asthmatic attack falling to the ground so that he could not be moved to the back room.

73. As a result of this feigned attack, the EMS was called, and plaintiff managed to avoid being beaten at the police headquarters.

74. While being examined by the EMS, Plaintiff told the EMT that he feared he was going to be beaten up and asked her to take a picture of him to document

his state.

75. After the EMS left,  the defendant police officers gave up on their attempt to move him to a room in the back without cameras and he was processed and transferred to the Middlesex County Corrections Center even though there was no evidence, no probable 7cause, no reasonable suspicion.

***Plaintiff's Unlawful Confinement In Cruel and Unusual Conditions (8^(Th))***

76. After his wrongful arrest, hostile and threatening interrogation, the Middlesex Corrections officers continued the abuse of plaintiff by keeping him in functional solitary confinement by keeping Plaintiff in intake for his first week at the jail.

77.  Because he was kept in intake, Plaintiff took meals alone.

78. Because he was kept in intake, Plaintiff was denied recreation outside.

79. Because he was kept in intake, Plaintiff was denied recreation opportunities on the regular tiers, e.g., television, library, conversation.

80. While wrongly kept in intake for an extended period, Plaintiff was in fear of physical abuse as the Corrections Officers verbally threatened him with excessive force because, they wrongly asserted, "he had attacked a fellow officer."

81. Plaintiff was only transferred to a tier after his second court appearance seven days later after, upon information and belief, his Public Defender intervened.

82. This extended stay in intake was contrary to best practices in prison management, and, upon information and belief, was contrary to the standards and procedures of the Middlesex Corrections Facility.

83. The Middlesex Corrections Facility has a history of engaging in cruel and

unusual punishment violative of the 8th Amendment as seen, *inter alia,* in its litigation history.

### Insistence on Prosecution by Prosecutor Who Knew of Absence of Factual Basis

84. Plaintiff's first court appearance occurred three days after his wrongful arrest.

85. At that time, Plaintiff's testified in open court that he had never driven a car, had never been in Woodbridge, and that this was a case of mistaken identity.

86. Due to the misconduct of the police defendants and the utter and complete failure of the Middlesex Prosecutor's office to do an appropriate investigation or to insist on an appropriate investigation by the Woodbridge defendants, Plaintiff was returned to the Middlesex Jail where he remained until the next court appearance about a week later.

87. The conduct of the Middlesex Prosecutor and its agents was so misguided that it can only be an expression of acted out of personal motive, with malicious intent, or in excess of his jurisdiction.

88. Again, at this second court appearance, Plaintiff asserted that this was a case of mistaken identity- telling the court again that he does not drive and that he had never been to Woodbridge prior to responding there because of the wrongful summons.

### Personal Motive, Malice, or In Excess of Jurisdiction

89. The Middlesex County Prosecutor knew or should have known that the facial recognition match was based on faulty technology which is biased against African Americans and that Plaintiff was innocent because all of the other evidence was exonerating.

90. Therefore, the Middlesex County Prosecutor as supervisor of the investigation should have corrected it and thus prevented the issuance of the arrest warrant against Plaintiff.

91. Moreover, after the arrest of Plaintiff, the Middlesex County Prosecutor intentionally or with reckless disregard refused to utilize the wealth of exonerating evidence. .

92. On or about February 14, 2019, the result of the AFIS was received and it indicated that the finger prints lifted at the scene of the crime did not match plaintiff but matched Barrington Walker.

93. This exonerating evidence was never provided to Plaintiff until discovery in this law suit.

94. Upon information and belief, the Defendant Prosecutor and Police Officers improperly manipulated the investigation to prevent the truth from being known.

95. After receipt of the discovery from the Prosecutor, plaintiff presented to the Defendant prosecutor an iron clad alibi, namely the documents from Western Union to wire money to his fiancé which plaintiff was completing and processing in Paterson at the same time that the incident at the Hampton Inn was taking place.

96. Despite this, the Middlesex County Prosecutor and the Woodbridge Defendants failed to include this information in their investigation and continued to argue that Plaintiff's incarceration should be continued even though no evidence tied him to the crime.

97. Pressure was put on Plaintiff by the Prosecutor and the court to accept a plea

deal where he would serve an extended sentence of many years.

98. Plaintiff was threatened with a draconian sentence of over 25 years to get him to take the plea deal.

99. The targeting of plaintiff, his arrest, and the abusive aspects of his detention together with the insistence on proceeding with the prosecution all occurred without a scintilla of evidence to support it.

100. Plaintiff was released but only due to the new no-bail rules

101. Once out of jail, Plaintiff, was terrified that some inexplicable conspiracy or vendetta would destroy him, so he retained an expensive and talented criminal lawyer.

102. However, despite this, the defendants kept Plaintiff in a state of apprehension for almost a year, refusing to drop charges, demanding a plea to lesser included charges, and promising that he would be tried and convicted and that if convicted he would incarcerated with no chance of release for at least 20 years.

103. This pre-trial period constitutes a seizure under the Fourth Amendment and a Due Process violation, Procedural and Substantive, under the Fourteenth Amendment.

104. The charges were only dropped on the eve of trial in late November 2019, when the plaintiff insisted to the court that he was going to trial because he was innocent and because there was no evidence.

105. Plaintiff suffered physical and emotional pain because of the wrongful acts of defendants.

106. Plaintiff also suffered financial loss and disruption since he was "absent

without leave" from his job while wrongly incarcerated.

107.   Plaintiff continued and continues to suffer from anxiety and distress even

after all charges were finally dismissed by the court when the Middlesex

Prosecutor was reprimanded in court for this wrongful arrest, confinement and

prosecution.

108.   The actions of the defendants were either willfully malicious or were done in

reckless disregard and are actions that shock the conscience.

## COUNT I

### AS AND FOR A FIRST CAUSE OF ACTION FOR   MALCIOUS PROSECUTION UNDER THE FOURTH AMENDMENT

109. Plaintiff hereby re-alleged and incorporates herein by reference all of the prior

paragraphs as though the same were fully set forth herein.

110. The individuals, Defendant Woodbridge Police Officer Andrew Lyszk, with

Defendant Sgt. Joseph Licciardi, Defendant Peter Nastasi, Assistant County

Prosecutor, acted in their individual capacities and under color of state law.

111. The actions of these individuals violated clearly established rights of plaintiff,

including but not limited to the right to be free from wrongful seizure as guaranteed

by the Fourth Amendment to the Constitution of the United States and the right to

Procedural and Substantive Due Process and fair treatment during arrests and

detention, violations of the First, Fourth and 14th Amendments to the Constitution of

the United States.

112. This cause of action is cognizable to this court through Section 1983 of the United

States Code and through the New Jersey Civil Rights Act,  N.J.S.A., 10:6.2.

113.   Thus, the elements of this cause of actions ((1) Defendants initiated a

criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the

proceeding was initiated without probable cause; and (4) the Defendants acted

maliciously or for a purpose other than bringing the Defendants to justice)  are

present.


## COUNT II

### AS AND FOR A SECOND CAUSE OF ACTION FOR   A VIOLATION OF EQUAL PROTECTION


114.    Plaintiff repeats and re-alleges all of the factual averments in paragraphs one

through 95  above as if set forth in full.

115.   Defendants acted either intentionally or with reckless disregard when

exhibiting anti-black animus which was a substantial motivating factor leading

to the wrongful acts of defendants.

116.   The anti-black animus is evidenced in the fixated reliance on the facial

recognition technology and lack of any corrective checks or balances for this

technology which is known to be unable to reliably identify African American

faces.

117.   The use of the faulty recognition system together with the suppression of all

of the exonerating evidence (obvious height disparity, failure to use DNA,

failure to use fingerprints, failure to allow for alibi evidence etc.) constitutes

intentional wrongdoing or exhibits reckless disregard.

118.   These wrongful acts of Defendants constitute an egregious violation of the

guarantee to Equal Protection under the Law which is contained in the

Fourteen Amendment and which was enacted to protect African Americans from this type of mistreatment.

119.   Plaintiff, therefore, asserts a claim under Section 1983 of the United States Code and  the New Jersey Civil Rights Act, *N.J.S.A.*  10:6.2.

120.    *Inter alia*, the wrongful treatment of Plaintiff was an extreme case of racial profiling.

121.   Racial profiling is considered to be an Equal Protection claim- essentially that Plaintiff was detained, arrested, and charged primarily because he is or appears racially African or African American, a violation, inter alia, of the Fourteenth Amendment to the Constitution of the United States.

122.   The defendant's actions had a discriminatory effect and (were motivated by a discriminatory purpose.

123.   Stated somewhat differently, Plaintiff is a member of a protected class and he was treated differently from similarly situated individuals in an unprotected class.

# COUNT III

## AS AND FOR A THIRD CAUSE OF ACTION FOR EXCESSIVE FORCE,

124.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 105 above as if set forth in full.

125.   The police action against plaintiff was not justified and was excessive.

126.   Excessive force refers to force in excess of what a police

officer reasonably believes is necessary.

127.   No reasonable officer would be able to consider that it was reasonable to

issue an arrest warrant on the basis of facial recognition technology that is

known to be faulty and untrustworthy.

128.   No reasonable officer would believe that it was necessary to enforce an arrest

warrant when plaintiff presented himself to clear up the case of mistaken

identity.

129.   No reasonable officer would have  been involved in the terrorizing of

Plaintiff through this entire ordeal (from refusing to consider Plaintiff

assertions that he did not drive, that he had never been to Woodbridge prior to

responding to the summons, that the fact that all the forensics exonerated

Plaintiff (DNA, finger prints, etc. )).

130.   No reasonable officer would believe it reasonable to threaten plaintiff with

physical harm.

131.   The use of Excessive Force by Defendants is a violation of the Fourth

Amendment to the Constitution of the United States of America and the

Eighth Amendment.

132.   All of the other officers who observed the wrongful treatment of Plaintiff are

also liable for not preventing the wrongdoers from using excessive force

133.   The actions of defendants were such to put plaintiff in a reasonable concern

for his physical safety as he was in apprehension of being physically assaulted.

134.   This use of excessive force was consistent with or caused by the training, supervision, and policies of the defendant entities, thus creating *Monell* liability.

## COUNT IV

### WOODBRIDGE TOWNSHIP IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED BY A MUNICIPAL POLICY OR CUSTOM

135.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 116 above as if set forth in full.

136.   The illegal and unjust treatment of plaintiff was caused by policies, customs, and practices of the Woodbridge Township Police Department.

137. Woodbridge Township allowed the use of facial recognition software and allowed officers to disregard exonerating evidence despite the clear anti-black bias consequences.

138. Woodbridge Township failed to supervise the use of facial recognition by its police officers to attempt to curb the racially discriminatory effect of facial recognition.

139. Woodbridge Township failed to properly train its police officers in the use of facial recognition technology to prevent it from causing racially tinged injustices.

## COUNT V

### THE MIDDLESEX COUNTY PROSECUTOR IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED OR WERE THE RESULT OF  PERSONAL MOTIVE, MALICIOUS INTENT OR IN EXCESS OF ITS JURISDICTION

140.    Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 117 above as if set forth in full.

141.    The illegal and unjust treatment of plaintiff was caused by policies, customs, and practices of the Middlesex Prosecutor's Office.

142.  In its investigatory function, the Middlesex Prosecutor's Office allowed the use of facial recognition software and allowed prosecutors to disregard exonerating evidence despite the clear anti-black bias consequences.

143.   The Middlesex County Prosecutor failed to supervise the use of facial recognition by its assistant prosecutors to attempt to curb the racially discriminatory effect of facial recognition.

144.   The Middlesex County Prosecutor failed to properly train its assistant prosecutors in the use of facial recognition technology to prevent it from causing racially tinged injustices.

145.  The Middlesex County Prosecutor failed to appropriately train, supervise and to discipline its prosecutors who misused facial recognition technology and or otherwise engaged in a prosecution driven by personal animus,  malice or knowingly outside its purview.


**COUNT VI**

**AS AND FOR A SIXTH CAUSE OF ACTION FOR CRUEL AND UNUSUAL PUNISHMENT BY DEFENDANT MIDDLESEX COUNTY CORRECTIONS DEPARTMENT**

146.    Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 127 above as if set forth in full.

147.  *Inter alia*, Section 1983 and  the New Jersey Civil Rights Act gives a cause of action to New Jersey Citizens for violation of the Eight Amendment to the Constitution of the prohibits cruel and unusual punishment.

148.  Defendant Middlesex County Corrections Department kept plaintiff  in a functional equivalent to solitary confinement for the first part of his incarceration, for at least six days after  his wrongful arrest which is *per se* cruel and unusual.

149.  Plaintiff was put in fear of physical harm during his time in intake when Corrections Officers harassed him because he was alleged to have tried to assault another officer.

150.  The identity of the officers responsible for this mistreatment is unknown at this time.

151.  Plaintiff remained in fear of physical harm during his entire incarceration as he was subjected to continuous threats of illegal and unconstitutional violence.

152.  Plaintiff was put in fear and apprehension that his innocence was of no import even though obvious and manifest  because  he had never driven a car, had never been to Woodbridge,  that the fingerprints did not match, and the DNA did not match.

153.  The cruel and unusual punishment experienced by plaintiff at the Middlesex County Corrections Department was a was caused by policies, customs, and practices of the Middlesex County Corrections Department.

154.   The Middlesex County Corrections Department failed to supervise, train, and/or discipline its officers so that it caused the unjust conditions of plaintiff's confinement.

## COUNT VII

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR CIVIL CONSPIRACY UNDER SECTION 1985 OF THE UNITED STATES CODE AND UNDER THE JERSEY CIVIL RIGHTS LAW (N.J.A.S 10-12.1 et seq.)

155.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 136 above as if set forth in full.

156.   Defendants engaged in a conspiracy for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

157.   Defendants acted in furtherance of the conspiracy

158.   Plaintiff was deprived of any right or privilege of a citizen of the United States.

## COUNT VII

### THE COUNTY OF MIDDLESEX IS LIABLE BECAUSE THE VIOLATIONS OF PLAINTIFF'S RIGHTS WERE CAUSED BY A POLICY OR CUSTOM

159.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 14020 above as if set forth in full.

160.   The cruel and unusual punishment experienced by plaintiff at the Middlesex County Corrections Department was a was caused by policies, customs, and practices of the Middlesex County Corrections Department.

161.   The Middlesex County Corrections Department failed to supervise, train, and/or discipline its officers so that it is liable for the unjust conditions of plaintiff's confinement.

## COUNT VIII

### AS AND FOR AN EIGHTH CAUSE OF ACTION CIVIL CONSPIRACY

162.   Plaintiff repeats and re-alleges all of the factual averments in paragraphs one through 112 above as if set forth in full.

163.   Defendants engaged in a conspiracy for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

164.   Section 1985 of the United States Code and The New Jersey Civil Rights Act provide that plaintiff can bring this claim

## COUNT VIII

### AS AND FOR A EIGHTH CAUSE OF ACTION FOR NEGLIGENT MANUFACTURE OR SALE

165. Plaintiff repeats and re-alleges all of the factual averments in paragraphs one   through 146 above as if set forth fully herein.

166. Upon information and belief and as shown by public records, the New York State Intelligence Center (NYSIC) has since 2018 had a contract to use IDEMIA, Inc.'s "MorphoBIS 5.0 Product Suite" of facial recognition software

167. ..Indemia Inc., is a multinational corporation, upon information, doing business in the state of New Jersey.

168. Upon information and belief,  the IDEMIA, Inc., s product was sold and maintained by an unknown private entity or entities.

169. Indemia knew or should have known that its facial recognition product is flawed yet it failed to advise its customers and users of this fact.

170. The negligence of the manufacturer(s), designer(s), and seller(s) of the facial recognition software is a legal cause of the harm suffered by plaintiff.

## COUNT IX
## AS AND FOR A NINTH  CAUSE OF ACTION, THE MANUFACTURER(S), DESIGNER(S), and SELLER(S) OF THE FACIAL RECOGNITION TECHNOLOGY EXHIBITED MALICE OR SHOCKING DISREGARD SO THAT PUNITIVE DAMAGES ARE APPROPRIATE

171. Plaintiff repeats and re-alleges all of the factual averments in paragraphs one   through 152 above as if set forth fully herein.

172. In fact, upon information and belief, Indemia made false claims for the accuracy of the software.

173. Therefore, exemplary damages must be imposed on these defendants.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against

Defendants as follows:

A.  Damages are mental and emotional anguish, counsel fees in this and exemplary damages.

B.  Compensatory damages for Plaintiff lost wages as well as for his psychological and emotional distress and damages, loss of standing in his community, damage to his reputation, and his family's un-reimbursed out of pocket expenses incurred in response to these circumstances;

C.  Exemplary Damages because of the outrageous conduct of defendants,

D.  Statutory interest;

E.  Costs; and

F.  Reasonable attorney fees enhanced by a *Rendine* factor.

G.  All other such relief as the Court finds just and reasonable.

Respectfully submitted,

Date: October 3, 2022

Daniel W. Sexton,  Esq.
Counsel for Plaintiff Nijeer Park

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims pled herein.

Respectfully submitted

By: Daniel W. Sexton, Esq.
   AIN 1021992

Date: October 3, 2022