MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
Attorney for Defendants,
Christopher Kuberiet and Peter Nastasi

By: Phoenix N. Meyers(307302019)
     Deputy Attorney General
     609-815-2839
     Phoenix.Meyers@law.njoag.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| NIJEER PARKS,<br><br>   Plaintiff,<br><br>v.<br><br>JOHN E. McCORMACK., et al.,<br><br>  Defendants. | Hon. Julien Xavier Neals , U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>Civil Action No.<br>2:21-cv-04021-JXN-LDW<br><br>**NOTICE OF MOTION TO DISMISS PLAINTIFF NIJEER PARK'SCOMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 12(b)(1)** |

**TO:**   The Honorable Julien Xavier Neals, U.S.D.J.
       United States District Court, District of New Jersey
       Martin Luther King Building & U.S. Courthouse
       50 Walnut Street, Court Room 4A
       Newark, New Jersey 07101

       All Counsel of Record **(via em/cmf)**

       **PLEASE TAKE NOTICE** that on January 17**, 2023**, the undersigned, Matthew J. Platkin, Attorney General of New Jersey, by Deputy Attorney General Phoenix Meyers, appearing on behalf of Defendants Christopher Kuberiet and Peter Nastasi, shall move before the Honorable Julien Xaview Neals, United States District Judge, in the Martin Luther King Building & U.S.

Courthouse, Newark, New Jersey, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), for an Order dismissing Plaintiff Nijeer Park's Complaint with prejudice.

**PLEASE TAKE FURTHER NOTICE** that the undersigned will rely on the attached Brief in support of the motion.

**PLEASE TAKE FURTHER NOTICE** that the undersigned respectfully requests that the Court rule upon the moving papers submitted, without requiring appearance of counsel, pursuant to Federal Rule of Civil Procedure 78, unless opposition is submitted, in which case oral argument is requested.

A proposed form of Order is attached hereto.

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: _/s/_ Phoenix N. Meyers ___
Phoenix N. Meyers
Deputy Attorney General
Attorney ID: 307302019

DATE: December 19, 2022

## <u>TABLE OF CONTENTS</u>

**Page No.**

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ....................................................................2

STANDARD OF REVIEW ....................................................................3

LEGAL ARGUMENTS..........................................................................5

   I.     ALL CONSTITUTIONAL CLAIMS AGAINST KUBERIET AND NASTASI SHOULD BE DISMISSED BECAUSE THEY ARE NOT CONSIDERED A "PERSON" AMENABLE TO SUIT UNDER 42 U.S.C.A.§ 1983 AND NJCRA ........................................................5

   II.    THE ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST KUBERIET AND NASTASI ............................7

   III.   PLAINTIFF'S CALIMS AGAINST KUBERIET AND NASTASI SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY ......................................................12

   IV.   PLAINTIFF'S CALIMS AGAINST KUBERIET AND NASTASI SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE SERVICE OF A NOTICE OF TORT CLAIM WITHIN NINETY DAYS OF THE ACCRUAL OF HIS CLAIM ..............................16

CONCLUSION....................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................4

*Ashcroft v. Al-Kidd,,*
563 U.S. 731 (2011)..............................................................................13

*Anderson v. Larson,*
327 F.3d 762 (8th Cir. 2003) ................................................................11

*Anderson v. Creighton,*
483 U.S. 635 (1987).........................................................................13, 14

*Argueta v. U.S. ICE,,*
643 F.3d 60 (3d Cir. 2011)....................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................4

*Beauchamp v. Amedio,*
164 N.J. 111 (2000) .........................................................................16, 17

*Blanciak v. Allegheny Ludlum Corp.,*
77 F.3d 690 (3d Cir. 1995).....................................................................5

*Brown v. State,*
124 A.3d 243 (N.J. Sup. Ct. App. Div. 2015).................................6, 7, 10

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993).......................................................................7, 9, 10

*Burns v. Reed,*
500 U.S. 478 (1991)................................................................................9

*Butz v. Economou,*
438 U.S. 478 (1978).........................................................................10, 12

*Camreta v. Greene,*
  563 U.S. 692 (2011)....................................................................................................13

*Crawford-El v. Britton*
  523 U.S. 574 (1998)....................................................................................................15

*Davis v. Scherer*
  468 U.S. 183 (1984)....................................................................................................15

*Evans v. City of Newark,*
  2016 WL 2742862 (D.N.J. May 10, 2016),.................................................................6

*Forsyth v. Kleindienst,*
  599 F.2d 1203 (3d Cir. 1979).......................................................................................8

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009).........................................................................................5

*Fuchs v. Mercer Cty.,*
   260 F. App'x 472, 475 (3d Cir. 2008) ...............................................................10, 15

*Glass v. City of Phila.,*
  455 F. Supp. 2d 302 (E.D. Pa. 2006) ........................................................................16

*Hof v. Janci,*
  2017 WL 3923296  (D.N.J. Sept. 7, 2017) ..................................................................6

*Iaconianni v. N.J. Turnpike Auth.,*
  236 N.J. Super. 294 (App. Div. 1989) .......................................................................17

*Imbler v. Pachtman,*
  424 U.S. 409 (1976).....................................................................................................7

*Int'l Fin. Corp. v. Kaiser Grp. Int'l, Inc.,*
  399 F.3d 558 (3d Cir. 2005)..........................................................................................3

*Ismail v. Cnty. of Orange,*
  917 F. Supp. 2d 1060, 1068 (C.D. Cal. 2012) ...........................................................11

*Kalina v. Fletcher,*
  522 U.S. 118 (1997).....................................................................................................9

*Kamienski v. Ford,*
  2019 WL 4556917, (D.N.J. Sept. 17, 2019) .......................................................10, 11

*Kaul v. Christie,*
  372 F. Supp. 3d 206 (D.N.J. 2019) .........................................................................5, 6

*Kedra v. Schroeter*,
    876 F.3d 424 (3d Cir. 2017)..........................................................................14

*Keffer v. Reese*,
    2018 WL 928255 (W.D. Pa. Feb. 16, 2018) ...........................................11

*Kulwicki v. Dawson*,
    969 F.2d 1454 (3d Cir. 1992)........................................................................8

*Lutz v. Twp. of Gloucester*,
    153 N.J. Super. 461 (App. Div. 1977) ....................................................17

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2009)..........................................................................4

*McKinney v. Prosecutor Cnty. Prosecutor's Office*,
    612 Fed. Appx. 62 (3d Cir. 2015)...............................................................6

*Michaels v. New Jersey*,
    50 F. Supp. 2d 353 (D.N.J. 1999) .............................................................14

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)....................................................................................13

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977).........................................................................3

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015)..................................................................................14

*Orsatti v. N.J. State Police*,
    71 F.3d 480 (3d Cir. 1995)..........................................................................13

*Pearson v. Callahan*,
    555 U.S. 223 (2009)..............................................................................12, 13

*Perry v. Gold & Laine, P.C.*,
    371 F. Supp. 2d 622 (D.N.J. 2005) .............................................................4

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014)....................................................................................14

*Priore v. State*,
    190 N.J. Super. 127 (App. Div. 1983) ....................................................17

*Ramos v. Flowers*,
    56 A.3d 869 (N.J. Super. Ct. App. Div. 2012)......................................5, 9

*Rehberg v. Paulk*,
  __ U.S. __, 132 S. Ct. 1497, 1506 (2012).....................................................................8

*Reichle v. Howards*
  566 U.S. 658 (2012).....................................................................................................13

*Rolo v. City Investing Co. Liquidating Trust*
  155 F.3d 644 (3d Cir. 1998).........................................................................................8

*Rose v. Bartle*,
  871 F.2d 331 (3d Cir. 1989)....................................................................................8, 10

*Saucier v. Katz*,
  533 U.S. 194 (2001).....................................................................................................13

*Schloss v. Bouse*,
  876 F.2d 287 (2d Cir. 1989)........................................................................................11

*Small v. State*,
  2015 N.J. Super. Unpub. LEXIS 530 (N.J. Super. Ct. App. Div. Mar. 12,
  2015)..............................................................................................................................10

*Smolow v. Hafer*,
  353 F. Supp. 2d 561 (E.D. Pa. 2005)............................................................................3

*Trafton v. City of Woodbury*,
  799 F. Supp. 2d 417 (D.N.J. 2011)...............................................................................6

*Van de Kamp v. Goldstein*,
  555 U.S. 335 (2009).....................................................................................................15

*Yarris v. Delaware*,
  465 F.3d 129 (3d Cir. 2006).....................................................................................8, 9

*West v. Atkins*,
  487 U.S. 42 (1988).........................................................................................................6

*Will v. Michigan Dep't of State Police*
  491 U.S. 58  (1988)..............................................................................................*passim*

*Williams v. Sec'y Pa. Dep't of Corr.*,
  848 F.3d 54 (3d Cir. 2017)..........................................................................................14

**Statutes**

42 U.S.C. § 1983.........................................................................................................*passim*

N.J. Stat. Ann. 10:6-1 et seq. ...................................................................................*passim*

N.J. Stat. Ann. § 59:8-3..................................................................................................16

N.J. Stat. Ann. § 59:8-8..................................................................................................16

N.J. Stat. Ann. § 59:8-9..................................................................................................17

## **PRELIMINARY STATEMENT**

This lawsuit arises from an arrest of Plaintiff, Nijeer Parks, and attempts improperly to hold First Assistant Middlesex County Prosecutor Christopher Kuberiet and Assistant Middlesex County Prosecutor Peter Nastasi liable for their alleged prosecutorial decisions.  Parks alleges that his constitutional rights were violated by defendants, with the core of Plaintiff's case being that facial recognition software misidentified him as a potential suspect, leading to his incarceration. Plaintiff identifies Kuberiet as allowing the use of facial recognition software to issue an arrest warrant when he knew or should have known that the software produced inaccuracies, ECF No. 72 at ¶¶ 89-90, and  Plaintiff identifies Nastasi as authorizing the issuance of an arrest warrant. *Id.* at ¶ 44.

Plaintiff's claims against Kuberiet and Nastasi fail for several reasons. To the extent Plaintiff is suing Kuberiet and Nastasi in their official capacities, Plaintiff's claims fail to state a claim because State officials acting in their official capacities are entitled sovereign immunity and are not considered persons subject to suit under 42 U.S.C.A. § 1983 and the New Jersey Civil Rights Act ("NJCRA").  In addition, Kuberiet and Nastasi should be dismissed because those defendants have absolute prosecutorial immunity for actions undertaken in their role as prosecutors. That is, their determinations about whether and how to prosecute Parks were core

prosecutorial activities intimately associated with the judicial process and protected by the absolute immunity.

The doctrine of qualified immunity also shields Kuberiet and Nastasi from liability in their individual capacity because Plaintiff did not show Kuberiet nor Nastasi violated a statutory or constitutional right nor that the asserted right was clearly established at the time of the challenged conduct. Specifically, Plaintiff does not allege a due process violation and there is not consitutional right to an investigation.

For all of these reasons, the Court should dismiss Plaintiff's Complaint against defendants Christopher Kuberiet and Peter Nastasi with prejudice.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

For the purpose of this motion only, Defendants accept the factual and procedural recitation contained in Plaintiff's second amended complaint filed on October 7, 2022.

According to the second amended complaint, Plaintiff alleges that on February 5, 2019, Plaintiff was arrested at the Woodbridge Police Station. ECF No. 72 at ¶¶ 57-61. Plaintiff alleges that Woodbridge Police Department used facial recognition technology on a fake driver's license obtained from the scene of the crime. *Id.* at ¶ 24. Plaintiff then alleges that the photo from the fake license resulted

in "high profile" match to Plaintiff, and it was never checked against DNA. *Id.* at ¶¶ 23-28.

As to Kuberiet, plaintiff alleges that the Middlesex County Prosecutor failed to supervise the use of facial recognition by its assistant prosecutors. ECF No. 72 at ¶¶ 89-90. Plaintiff further alleges that the Middlesex County Prosecutor failed to conduct an adequate investigation and refused to utilize exonerating evidence after arresting Plaintiff. *Id.* at ¶¶ 86; 89-91. As to Nastasi, plaintiff alleges he in his official or personal capacity, "or some other person in the Middlesex County Prosecutor's Office" conducted a faulty investigation and authorized the issuance of an arrest warrant when they knew or should have known there was no basis for issuance of same. *Id.* at ¶ 44. As a result, Plaintiff asserts constitutional violations against the defendants collectively and seeks judgment for monetary damages.

## STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for lack of subject matter jurisdiction. A motion under this Rule can be brought at any time during the litigation, including as late as on appeal. *Int'l Fin. Corp. v. Kaiser Grp. Int'l, Inc.,* 399 F.3d 558, 565 (3d Cir. 2005).

In evaluating a motion to dismiss under Rule 12(b)(1), a district court must first determine whether the defendant's motion attacks (1) the complaint as deficient

on its face; or (2) the existence of subject matter jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A defendant's "facial attack" entails an assertion that the plaintiff did not properly plead jurisdiction, whereas a defendant's "factual attack" involves an averment that jurisdiction is lacking on the basis of facts outside of the pleadings. *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).

Where a Rule 12(b)(1) motion facially attacks the complaint, the court must take all allegations in the complaint as true. *Mortensen*, 549 F.2d at 891. Where, however, the defendant attacks the court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to the plaintiff's allegations, and the court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. *Id.* In both scenarios, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Id.*

## B.   Federal Rule of Civil Procedure 12(b)(6)

In lieu of filing an answer to a complaint, a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this Rule, a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a

4

formulaic recitation of the elements of a cause of action' will not do." *Id.*; *see also Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 626 (D.N.J. 2005) (providing that on a Rule 12(b)(6) motion, district courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations") (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 n.8 (3d Cir. 1997)).

Under the *Iqbal/Twombly* pleading framework, a district court should undertake a three-prong analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563. This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## LEGAL ARGUMENTS

### POINT I

### ALL CONSTITUTIONAL CLAIMS AGAINST KUBERIET AND NASTASI SHOULD BE DISMISSED BECAUSE THEY ARE NOT CONSIDERED A "PERSON" AMENABLE TO SUIT UNDER 42 U.S.C.A § 1983 AND THE NJCRA.

To be liable within the meaning of § 1983, a defendant must be a "person." The Supreme Court of the United States has held that "States are not 'persons' within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute." *Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690, 697 (3d Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). Additionally, in *Will*, the Supreme Court specifically held that state agencies and officials acting in their official capacity are likewise not "persons" under § 1983. *Will*, 491 U.S. at 70-71.

While this statute provides a federal forum to remedy many deprivations of civil liberties, it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 60 (1989); see also *Kaul v. Christie*, 372 F. Supp. 3d 206, 244 (D.N.J. 2019) ("New Jersey, a state, is not a 'person' under section 1983."). As such, a suit against state officials in their official capacity is no different from a suit against the state itself, and state officials in their official capacities are also not "persons"

amenable to suit under § 1983. *Will*, 491 U.S. at 71 (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

The New Jersey State Legislature intended the NJCRA to serve as an analog to § 1983, and to incorporate existing § 1983 jurisprudence when it created the NJCRA. *See Ramos v. Flowers*, 56 A.3d 869, 875-76 (N.J. Super. Ct. App. Div. 2012). As such, the State is not a person under the NJCRA. *Brown v. State*, 124 A.3d 243, 255 (N.J. Sup. Ct. App. Div. 2015). Thus, the NJCRA was modeled after 42 U.S.C.A. § 1983, and it is interpreted analogously to the Federal statute. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). As such, the State is not a person under the NJCRA. *Brown v. State*, 124 A.3d 243, 255 (N.J. Sup. Ct. App. Div. 2015).

Relevant here, the Third Circuit has specifically held that New Jersey County prosecutor offices are considered "state agencies" for § 1983 purposes when fulfilling their law enforcement and investigative — as opposed to administrative — roles. *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014). *See also McKinney v. Prosecutor Cnty. Prosecutor's Office*, 612 Fed. Appx. 62, 65 (3d Cir. 2015). In short, whereas personnel or staffing decisions fall within the administrative ambit of a prosecutor's office and therefore "flow from the County," *Evans v. City of Newark*, 2016 WL 2742862, at *9 (D.N.J. May 10, 2016), actions taken related to enforcing the criminal law fall within the "law enforcement

and prosecutorial functions" of the county prosecutor's office and, thus, flow from the State.  *Id.* at \*10.  Moreover, "[t]he category of the actions taken, and not their alleged wrongfulness, is determinative" of the civil rights statutes' "person" inquiry. *Hof v. Janci*, 2017 WL 3923296, at \*5 (D.N.J. Sept. 7, 2017).

Here, Plaintiff sues Kuberiet and Nastasi in their official capacities.  ECF No. *72*.  However, to state a plausible cause of action under § 1983, Plaintiff must name a "person" who allegedly violated his constitutional or statutory rights under color of law. *See West*, 487 U.S. at 48. However, Kuberiet and Nastasi do not qualify as a "person" for purposes of § 1983. *See Kaul*, 372 F. Supp. 3d at 244. Plaintiff cannot sue State Defendants under § 1983 in their official capacities because they do not constitute a "person" for purposes of that statute. *See Will*, 491 U.S. at 71. As the *Will* Court succinctly expounds, suits against state officials in their official capacities constitute nothing more than a suit against the State itself. *See id*. And because the NJCRA is analogous to § 1983, Plaintiff failed to state a plausible claim under the NJCRA because neither Kuberiet nor Nastasi are considered a "person" amenable to suit. *See Brown v. State*, 124 A.3d at 255. Thus, Plaintiff's claims against Kuberiet and Nastasi fail as a matter of law.

## POINT II

### THE ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST KUBERIET AND NASTASI.

It is a long-held rule that prosecutors enjoy absolute immunity from liability in civil suits for actions taken in their role as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). Such immunity is founded in the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. Moreover, if subject to suit, the prosecutor would become "constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Id. at 424-25. Indeed, "[s]uch suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 425.

To that end, absolute immunity applies to all activities that are "intimately associated with the judicial process," and shields a prosecutor from liability for any and all alleged wrongdoing that the prosecutor is alleged to have committed while an advocate for the state. *Imbler,* 424 U.S. at 430; *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation

of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity[,]" including "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (prosecutorial immunity protects decision to initiate prosecution even where malice is alleged); *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979) (prosecutorial immunity encompasses prosecutor's conduct in securing necessary information upon which to initiate prosecution); *Yarris v. Delaware*, 465 F.3d 129, 139 (3d Cir. 2006) (quoting *Kulwicki*, 969 F.2d at 1465) (prosecutor is "absolutely immune from liability for using 'false testimony in connection with [a] prosecution.'"); *Rose v. Bartle*, 871 F.2d 331, 344-45 (3d Cir. 1989) (prosecutor's solicitation and preparation of perjured testimony are "encompassed within 'the preparation necessary to present a case,'" and such action is "therefore immunized as involving the prosecutors' advocacy functions") (quoting *Myers v. Morris*, 810 F.2d 1437, 1449 (8th Cir.), cert. denied, 484 U.S. 828 (1987)). *See also Rehberg v. Paulk*, __ U.S. __, 132 S. Ct. 1497, 1506 (2012) (holding plaintiff cannot use evidence of a grand jury witness's testimony "to support any other §1983 claim concerning the initiation or maintenance of a prosecution").

While this immunity includes actions taken as an advocate before the court, it also extends to certain out-of-court conduct, *Kulwicki*, 969 F.2d at 1463, including "whether to dispose of a case by plea[,]" *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993), *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998), and to investigatory acts "to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution itself." *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir.), *aff'd in part, rev'd in part* 472 U.S. 511 (1985).

"Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity," but "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not." *Buckley*, 509 U.S. at 273. In respect of investigative acts, the Supreme Court stated:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.
>
> [*Id*. at 273]

11

Thus, "absolute immunity protects a prosecutor in the performance of investigative functions to the extent that the investigation is intimately associated with the judicial phase of the criminal process." *Davis*, 996 F.2d at 631.

As set forth above, the New Jersey State Legislature intended the NJCRA to serve as an analog to § 1983, and to incorporate existing § 1983 jurisprudence when it created the NJCRA. *See Ramos*, 56 A.3d at 876 (holding that, like in a § 1983 action, the defense of qualified immunity is available under the NJCRA); *Brown*, 124 A.3d at 255 (holding that, like in a § 1983 action, the State is not a person under the NJCRA). Thus, the federal court's enunciation of prosecutorial immunity under § 1983 also applies to Plaintiff's claims under the NJCRA. *See Small v. State*, 2015 N.J. Super. Unpub. LEXIS 530, at *18-19 (N.J. Super. Ct. App. Div. Mar. 12, 2015).

Relevant here, the Third Circuit, relying on the Supreme Court's prosecutorial immunity decisions--particularly the one in *Butz v. Economou*, 438 U.S. 478, 512-16 (1978), which extended the immunity to protect a government's civil/administrative attorneys-- explained that absolute prosecutorial immunity encompasses "the decision to initiate a prosecution"; the "evaluation of evidence collected by investigators"; and "even [the] failure to conduct [an] adequate investigation before filing charges." *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008). On the other hand, absolute immunity does not extend to "a prosecutor's administrative duties and those investigatory functions that do not relate

to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Small*, 2015 WL 1057840, at *7 (quoting *Buckley*, 509 U.S. at 273). Moreover, "[t]he mere invocation of the catch-word 'investigatory'... cannot suffice ... to forestall dismissal on immunity grounds." *Rose v. Bartle*, 871 F.2d 331, 345 (3d Cir.1989).

Particularly instructive on the distinction between investigatory functions and a prosecutor's advocacy role is *Kamienski v. Ford,* No. 311CV03056PGSDEA, 2019 WL 4556917, (D.N.J. Sept. 17, 2019), *aff'd* 844 F. Appx. 520 (3d Cir. 2021). Relevant to our inquiry here, the court listed the following activities, among others, as warranting absolute immunity: "deciding whether to prosecute; engaging in pretrial litigation activities concerning applications for arrest and search warrants, bail applications and suppression motions[.]" *Id*. at *5. Further, the list includes plea bargaining. *Id*.

In all, to fall within the absolute immunity, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). The importance of this protection cannot be overstated, for prosecutorial immunity "is essential for the proper functioning of our criminal and civil justice systems." *Loigman,* 185 N.J. at 582.

In this matter, claims against Kuberiet arise from his alleged failure to supervise assistant prosecutors in the use of facial recognition technology, causing Plaintiff's arrest. ECF No. 72**,** ¶ 143.  Plaintiff alleges that he stated several times that this was a case of mistaken identity. *See generally* ECF No. 72**.** However**,** the decision to drop or amend criminal charges is protected by the absolute immunity. *See Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (holding that prosecutor's decision to drop or forgo more serious charges in exchange for plea agreement is protected by prosecutorial immunity); *Anderson v. Larson*, 327 F.3d 762, 768-69 (8th Cir. 2003) (finding that prosecutor's decision to drop charges falls under the absolute immunity); *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1068 (C.D. Cal. 2012) (holding that dropping or amending charges are prosecutorial functions intimately associated with judicial phase of criminal process); *Keffer v. Reese*, 2018 WL 928255, at *8 (W.D. Pa. Feb. 16, 2018) (concluding that amending charges is prosecutorial function shielded by absolute immunity). Additionally, Plaintiff claims Kuberiet and Nastasi inappropriately authorized the issuance of an arrest warrant. ECF No. 72 at ¶44. However, case law instructs that absolute immunity applies to pre-trial litigation activities related to applications for arrest warrants. *Kamienski*, 2019 WL 4556917 at *5. As well, Plaintiff alleges the Kuberiet "pressured" Plaintiff to take the plea deal and "threatened" Plaintiff with a sentence surpassing twenty

years. ¶ 102. Yet, plea bargaining is an activity protected by absolute immunity. *Kamienski*, 2019 WL 4556917 at *5.

This case illustrates why courts have afforded absolute prosecutorial immunity to the government's prosecutors and civil attorneys. Plaintiff's claims against Kuberiet and Nastasi relate to their conduct as advocates for the State's criminal prosecution -- which falls squarely within the absolute prosecutorial immunity. Plaintiff -- who argued mistaken identify after he was identified as the individual who committed a crime after being a "high profile" match from the facial recognition technology --  has "react[ed] angrily and . . . seek[s] vengeance in the courts." *Butz*, 438 U.S. at 515-16.  However, because prosecutors must make their prosecutorial and legal decisions "free from intimidation and harassment," Kuberiet and Nastasi must be sheilded by absolute prosecutorial immunity from this mere retaliatory lawsuit. *Id.* at 516.

Here, no matter the statutory basis of claims against Kuberiet and Nastasi, they are entitled to absolute prosecutorial immunity. Plaintiff has failed to allege any conduct on the part of Kuberiet or Nastasi that was not part of their role as an advocate before the court. In addition, Plaintiff has also failed to allege that Kuberiet and Nastasi's actions constituted a crime, actual fraud, actual malice or willful misconduct.  As such, this Court should dismiss Plaintiff's claims against Kuberiet with prejudice based on the absolute prosecutorial immunity.

## POINT III

**PLAINTIFF'S CLAIM AGAINST KUBERIET AND NASTASI SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

Qualified immunity is an affirmative defense that shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity confers government officials with "breathing room to make reasonable but mistaken judgments about open legal questions" and shields "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Third Circuit has acknowledged that "the qualified immunity doctrine exists to encourage vigorous and unflinching enforcement of the law." *Argueta v. U.S. ICE*, 643 F.3d 60, 75 (3d Cir. 2011). As such, qualified immunity entitles a public official to not "stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The underlying rationale of qualified immunity is "to acknowledge that reasonable mistakes can be made." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Therefore, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the

16

'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (holding that "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law. . .").

Once a defendant raises the defense of qualified immunity, a plaintiff then has the multi-part burden of proving that (1) the government official violated a statutory or constitutional right; and (2) the asserted right was clearly established at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 735. Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson*, 555 U.S. at 236, and can dismiss claims under prong two "without ever ruling on" prong one, *Camreta v. Greene*, 563 U.S. 692, 705 (2011). In all, qualified immunity is a threshold issue that should be resolved at the outset of litigation. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

Defining the constitutional right at issue for qualified immunity purposes is critical in assessing whether or not that right was "clearly established." *Anderson*, 483 U.S. at 639. In particular, a defendant is entitled to qualified immunity unless a plaintiff shows that a clearly established right's "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he

was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779-80 (2014). Accordingly, qualified immunity would be a "worthless defense" if plaintiffs could simply invoke a "broad constitutional right," such as due process, and aver that a defendant violated that right. *Michaels v. New Jersey*, 50 F. Supp. 2d 353, 363 (D.N.J. 1999), *aff'd*, 222 F.3d 118 (3d Cir. 2000), *cert. denied*, *Michaels v. McGrath*, 531 U.S. 1118 (2001).

Furthermore, with regard to the "clearly established right" prong, "[a] clearly established right is one that is 'sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations omitted) (emphasis added). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). Courts in the Third Circuit "typically look to Supreme Court precedent or a consensus in the Courts of Appeals" to determine if an official has "fair warning that his conduct would be unconstitutional" and that the contours of the right are "sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 449-50 (3d Cir. 2017). In short, to satisfy the second prong of the qualified immunity inquiry, a plaintiff must show that a "general constitutional rule [has been] already identified in the decisional law" and applies with "obvious clarity." *Id.* at 450 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Finally, because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if the case is allowed to go to discovery

or trial without addressing its threshold inquiries. That is, in cases raising the issue of qualified immunity, the trial court must exercise its discretion "so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998)). Thus, the "district court should resolve that threshold question before permitting discovery." *Id.* at 598 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, Plaintiff's contention that Kuberiet failed to supervise the use of facial recognition technology by its assistant prosecutors, and failed to properly train and discipline its assistant prosecutors does not demonstrate that at the time of his conduct, he violated a constitutional right. Plaintiff has not cited to a single due process right in his Second Amended Complaint that Kuberiet allegedly violated. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (explaining that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision" Moreover, the Supreme Court has clarified that prosecutorial immunity extends to supervisory and administrative duties which "require legal knowledge and the exercise of related discretion, e.g. in determining what information should be included in training, supervision, or information-system management." *Van de Kamp v. Goldstein,* 555 U.S. 335, 344 (2009). Thus, Kuberiet is protected by qualified immunity for his alleged failure to supervise train, and discipline assistant prosecutors.

Further, Plaintiff alleges that Prosecutor Defendants conducted an inadequate investigation, and reliance on the use of facial recognition technology was misguided. ECF No. 72 at ¶¶ 86; 89-91. Case law dictates that Plaintiff was not constitutionally entitled to an investigation regarding the facial recognition software used by co-defendants at all. *See Fuchs v. Mercer Cty.*, 260 Fed. App'x 472, 475 (3d Cir. 2008) (finding that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation" (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)).

In sum, at the time in question, there was no "clearly established" right preventing Kuberiet and Nastasi from using prosecutorial discretion. *See Glass v. City of Phila.*, 455 F. Supp. 2d 302, 363 (E.D. Pa. 2006) ("[T]here can be no supervisory liability in the absence of a constitutional violation."). Moreover, the Second Amended Complaint is void of factual allegations that Kuberiet participated or directed others to use the facial recognition technology. Without such a "clearly established" right, neither Kuberiet nor Nastasi could have reasonably known they were violating Plaintiff's constitutional rights.

Therefore, because there was no underlying constitutional violation, Kuberiet and Nastasi are entitled to qualified immunity.

## POINT IV

### PLAINTIFF'S 42 U.S.C. § 1985 CONSPIRACY COUNT FAILS TO STATE A CLAIM.

Plaintiff's federal conspiracy claim is inadequate because it fails to allege any facts sufficient to state a claim under 42 U.S.C. § 1985(3). Section 1985(3) permits an individual to bring an action who was injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)).  In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the Supreme Court emphasized that Section 1985(3) requires the "intent to deprive of equal protection, or equal privileges and immunities," in order to properly state a claim.

Thus, to state a claim under Section 1985(3), a plaintiff must allege (1) a conspiracy of two or more persons; (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Phifer v. Sevenson Envtl. Servs.*, 619 F. App'x 153, 155 (3d Cir. 2015) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001)).

Here, Plaintiff fails to meet his burden. Prosecutor Defendants evaluated facial recognition evidence when considering whether to prosecute Plaintiff. From that, Plaintiff makes the illogical leap that Plaintiffs acted with the intent to deprive Plaintiff of his equal rights. Moreover, as stated in in Point III, supra, Plaintiff fails to allege a violation of a clearly established. For these reasons, Plaintiff fails to meet his burden and the claims against Prosecutor Defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Defendants Christopher Kuberiet and Peter Nastasi's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) be granted and all claims against these Defendant be dismissed with prejudice.

Respectfully submitted,

MATTHEW J. PALTKIN
ATTORNEY GENERAL OF NEW
JERSEY

By: /s/ Phoenix Meyers
Phoenix Meyers
Deputy Attorney General

22

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
Attorney for Defendants,
  Christopher Kulberiet and Peter Nastasi

By: Phoenix N. Meyers (307302019)
      Deputy Attorney General
      609-815-2839
      Phoenix.Meyers@law.njoag.gov
      DOL# 21-00054

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| NIJEER PARKS,<br><br>      Plaintiff,<br><br>      v.<br><br>JOHN E. McCORMACK et al.,<br><br>      Defendants. | Hon. Julien Xavier Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>Civil Action No.<br>2:21-cv-04021 -JXN-LDW<br><br>**ORDER DISMISSING PLAINTIFF NIJEER PARK'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)** |

**THIS MATTER** having been opened to the Court on application of Matthew

J. Platkin, Attorney General of New Jersey, by Phoenix N. Meyers, Deputy

Attorney General, appearing on behalf of Defendants Christopher Kuberiet and

Peter Nastasi ("State Defendants") for an Order dismissing Plaintiff   Nijeer

Park's  ("Plaintiff")

Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6), and the Court having considered the moving papers and for good cause shown,

**IT IS** on this _____ day of _____, 2021

**ORDERED** that the State Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) is hereby **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint against the State Defendants and any and all cross-claims are hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that a copy of this Order shall be served upon all parties that have entered an appearance within ten days of receipt hereof.

_____

HON. JULIEN XAVIER NEALS, U.S.D.J.

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
PO Box 116
Trenton, New Jersey 08625
Attorney for Defendant,


By: Phoenix Meyers (307302019)
     Deputy Attorney General
     609-815-2839
     Phoenix.Meyers@law.njoag.gov
     DOL# 21-00054

| | |
|---|---|
| NIJEER PARKS<br>   Plaintiff,<br><br>v.<br><br>JOHN E. McCORMACK, et al<br><br>   Defendants | CIVIL ACTION NO.<br>2:21-CV-04021-MCA-LDW<br><br>**CERTIFICATION OF SERVICE**<br><br>**(Electronically Filed)** |

     I certify that I caused a copy of a notice of motion, brief, form of proposed Order and a

certification of service in this matter to be electronically filed with the Clerk of the United States

District Court.



                               MATTHEW J. PLATKIN
                               ATTORNEY GENERAL OF NEW JERSEY


                               _/s_Phoenix Meyers
                               Phoenix Meyers
                               Deputy Attorney General

DATE: December 19, 2022